WEBSTER BANK *v.* JOANNA V. ZAK ET AL.
(AC 20906)

Foti, Mihalakos and Daly, Js.

Argued May 30—officially released August 13, 2002

*Kerry M. Wisser*, with whom was *Nathan A. Schatz*, for the appellant (defendant MFR of East Hampton, LLC).

*Jeffrey T. Beatty*, with whom, on the brief, was *Richard J. Beatty*, for the appellee (substitute plaintiff EMC Mortgage Corporation).

*Opinion*

FOTI, J. This appeal in a foreclosure action returns to this court on remand from our Supreme Court. *Webster Bank* v. *Zak*, 259 Conn. 766, 792 A.2d 66 (2002).[1] The defendant MFR of East Hampton, LLC (MFR), appeals from the trial court's judgment of foreclosure, claiming that the court improperly concluded that a prior judgment conclusively established the principal amount of debt owed by MFR to the substitute plaintiff, EMC Mortgage Corporation (EMC). The central issue in this appeal is whether it was improper for the court to determine that EMC's amended complaint did not vacate the entire previous judgment, which would have resulted in opening the pleadings as to all issues, including liability and the amount of debt. We affirm the judgment of the trial court.

---

[1] Prior to the appeal, MFR appealed to this court from the trial court's judgment of foreclosure. See *Webster Bank* v. *Zak*, 61 Conn. App. 402, 763 A.2d 1090 (2001). We, however, without reaching the merits of MFR's claim, "sua sponte, reversed and remanded the case to the trial court for the purpose of making factual findings to determine whether [MFR had] standing to assert its claim to an interest in the property under foreclosure and to otherwise participate in the proceedings." (Internal quotation marks omitted.) *Webster Bank* v. *Zak*, supra, 259 Conn. 772–73. Our Supreme Court reversed our judgment and held that MFR had standing to assert its claim. Id., 783. We now reach the merits of MFR's claim.

Our Supreme Court set forth the facts and procedural history of this case in *Webster Bank* v. *Zak*, supra, 259 Conn. 766. "On July 16, 1997, the plaintiff, Webster Bank (bank), brought an action seeking to foreclose a mortgage on three parcels of land in Clinton, of which the named defendant, Joanna V. Zak (Zak), was the titleholder of record.[2] On November 24, 1997, the trial court, *Arena, J.*, rendered a judgment of foreclosure by sale. After determining the amount of the debt due on the note and the costs associated with the foreclosure action, the court scheduled the sale date for July 18, 1998.

"The bank subsequently assigned its interest in the note and mortgage to EMC . . . . Thereafter, EMC moved to substitute itself as the plaintiff in the foreclosure action and Zak moved to extend the foreclosure sale date. On July 13, 1998, the trial court granted both motions. The court also opened the November 24, 1997 judgment and rendered a new judgment of foreclosure by sale with a sale date of September 19, 1998.

"On September 17, 1998, Zak filed in the United States Bankruptcy Court for the District of Connecticut for protection under chapter 13 of the United States Bankruptcy Code, which was later converted to a chapter 7 bankruptcy. See 11 U.S.C. § 101 et seq. The filing of the bankruptcy petition stayed the trial court proceedings,

---

[2] "Also included as defendants in the bank's foreclosure action were Kenneth A. Zak, an original mortgagor of the property who had since transferred his interest to Zak, and the following parties, all of which claimed some interest in the mortgaged property: GTT Corporation, as trustee of Oregon Properties Realty Trust (GTT); Jonathan Googel; Stephen J. Dellaquila; New Haven Savings Bank; Ferndale Condominium Association, Inc.; Boston Safe Deposit and Trust Company; the state of Connecticut; and the United States of America. The trial court subsequently granted motions to cite in MFR, Zak's successor in interest to the property, and Tracy M. Saxe, the trustee of Zak's bankruptcy estate, as defendants and a motion to substitute Donald Mondani as a defendant for GTT." *Webster Bank* v. *Zak*, supra, 259 Conn. 768–69 n.1.

and the foreclosure sale did not occur as scheduled. Thereafter, EMC filed in the Bankruptcy Court a motion for relief from the bankruptcy stay. On January 5, 1999, the Bankruptcy Court granted EMC's motion for relief from the stay on the condition that Tracy M. Saxe, the trustee of Zak's bankruptcy estate, be cited in as a party defendant in the foreclosure action. EMC subsequently moved in the trial court to open the judgment of foreclosure and to amend the complaint to cite in Saxe as a party defendant. On February 8, 1999, the trial court opened the judgment and granted EMC's motion to file an amended complaint. EMC subsequently filed an amended complaint naming Saxe as a party defendant.

"On March 31, 1999, Zak conveyed all of her right, title and interest, including her equity of redemption, in the foreclosed property to MFR by quitclaim deed. Saxe was not a signatory to the deed. Thereafter, MFR moved to be cited in as a party defendant, pursuant to General Statutes § 52-107 and Practice Book § 9-6, claiming that it was 'the record titleholder of the property that is the subject of the foreclosure, and any judgment of foreclosure will necessarily affect it by foreclosing out its interest as the titleholder . . . .'[3] MFR furnished a copy of the quitclaim deed in support of its motion. On May 4, 1999, without objection from EMC or Saxe, the trial court granted MFR's motion. EMC subsequently filed a second amended complaint in which it named MFR as a party defendant, stating: 'By her Quitclaim Deed dated March 31, 1999, and recorded April 1, 1999 . . . on the Clinton Land Records, [Zak]

[3] General Statutes § 52-107 provides in relevant part: "If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party."

Practice Book § 9-6 provides in relevant part: "Any person may be made a defendant who has or claims an interest in the controversy, or any part thereof, adverse to the plaintiff, or whom it is necessary, for a complete determination or settlement of any question involved therein, to make a party. . . ."

conveyed her interest in the mortgaged premises to [MFR].' MFR is the only defendant involved in this . . . appeal.

"MFR filed an answer and special defense to EMC's second amended complaint. In its special defense, MFR claimed that EMC's failure to provide the appropriate notice of default pursuant to the requirements of the mortgage agreement barred it from instituting foreclosure proceedings. No other party filed a pleading in response to EMC's second amended complaint.

"On October 8, 1999, EMC filed a motion for summary judgment. EMC claimed that MFR was bound by the trial court's November 24, 1997 judgment as Zak's successor in interest, and was precluded, therefore, from asserting new defenses to liability that Zak had not asserted prior to that judgment. Similarly, EMC contended that MFR was bound by the amount of the mortgage debt as determined by the trial court in connection with that judgment. MFR opposed the motion for summary judgment as to both the issue of liability and the amount of the debt. On February 8, 2000, the trial court granted summary judgment on the issue of liability, and scheduled a hearing on the amount of the debt for May 31, 2000.

"At that hearing, EMC claimed that the trial court should calculate the amount by adding to the debt established at the November 24, 1997 judgment the per diem interest that had accrued on that debt since that date. MFR contended, in response, that EMC's second amended complaint citing in MFR opened the pleadings and, thereby allowed MFR to assert new defenses to liability, as well as to contest the amount of the debt established by the trial court's November 24, 1997 judgment. Therefore, MFR claimed, the court should hear evidence regarding the amount of the debt.

"In its memorandum of decision, dated June 5, 2000, the trial court determined that 'each opening of the original judgment of foreclosure, dated November [24], 1997, was for a limited purpose: on July 13, 1998, to substitute EMC as successor plaintiff to [the bank]; on July [13], 1998, to set a new sale date of September 19, 1998; on February 8, 199[9], to cite in [Saxe] as trustee of the bankruptcy estate of [Zak].' It further determined that '[n]othing in the record indicates that the judgment of foreclosure by sale was ever vacated.' The court concluded 'that the debt established by the judgment of November [24], 1997, is [therefore] the controlling debt in this [foreclosure] action. . . .' [T]he trial court rendered a judgment of foreclosure by sale, and calculated the amount of the debt using the amount of the debt established at the November 24, 1997 judgment and adding the per diem interest that had accrued since that date." *Webster Bank* v. *Zak*, supra, 259 Conn. 768–72. MFR appeals from that judgment.

MFR claims that the court improperly held that EMC's second amended complaint did not open and vacate the entire November 24, 1997 judgment. Stated otherwise, MFR claims that the "new complaint gives all parties the opportunity to start the case anew for all purposes," and that the court's decision is contrary to established procedural rules and violative of due process. We disagree.

We first set forth the legal principles that govern our resolution of that issue. We review the court's decision not to open the pleadings as to all issues under an abuse of discretion standard. *Townsley* v. *Townsley*, 37 Conn. App. 100, 104, 654 A.2d 1261 (1995); see *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 128, 788 A.2d 83 (2002). Further, " '[a] foreclosure action constitutes an equitable proceeding. . . . In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination

of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court.' . . . This court must make every reasonable presumption in favor of the trial court's decision when reviewing a claim of abuse of discretion. *Yanow* v. *Teal Industries, Inc.*, 196 Conn. 579, 583, 494 A.2d 573 (1985)." (Citation omitted.) *People's Bank* v. *Letendre,* 57 Conn. App. 645, 646, 749 A.2d 1227 (2000); see 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 35, pp. 159–60. "Our review of the trial court's exercise of legal discretion is limited to the question of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." *People's Bank* v. *Letendre,* supra, 646.

Because MFR relies on the second amended complaint as the vehicle for opening the November 24, 1997 judgment as to all issues in the case, including liability and the amount of debt, we focus our attention on that complaint and its attendant circumstances.

Following its acceptance of the quitclaim deed from Zak, MFR moved to be cited in as an additional party defendant. The court properly granted MFR's motion. In response, the court ordered EMC to amend its complaint by naming MFR as a party defendant. To satisfy the court's order, EMC filed a motion requesting leave to do so. The motion specifically stated its limited purpose as "adding MFR . . . as a party defendant." MFR's motion to be cited in predicated the court's order for EMC to amend its complaint. In other words, but for MFR's motion to be cited in, EMC never would have had to file the second amended complaint. The filing of the second amended complaint, therefore, was compulsory in nature and not voluntary.

MFR, nevertheless, argues that the filing itself resulted in the opening of the judgment, as if the court never had rendered judgment, thereby allowing MFR

to challenge its liability and debt under EMC's note and mortgage. In support of its argument in that regard, MFR relies on Practice Book § 10-61 in conjunction with *Clover Farms, Inc.* v. *Kielwasser*, 134 Conn. 622, 59 A.2d 550 (1948), and *Antman* v. *Connecticut Light & Power Co.*, 117 Conn. 230, 167 A. 715 (1933), overruled in part, *Buck* v. *Morris Park, Inc.*, 153 Conn. 290, 293, 216 A.2d 187 (1965), appeal dismissed, 385 U.S. 2, 87 S. Ct. 33, 17 L. Ed. 2d 2 (1966). MFR's reliance on such authority, however, is misplaced. Practice Book § 10-61[4] simply does not limit the court's discretion to require an amended pleading for a limited purpose without vacating an entire previous judgment. MFR would have this court read Practice Book § 10-61 as absolutely requiring entire judgments to be opened and vacated upon the filing of an amended complaint, and to do so in complete disregard of judicial discretion. In light of the circumstances of this case, we conclude that Practice Book § 10-61 has no bearing on the court's decision[5] not to open the judgment as to all issues upon EMC's filing of its court-ordered second amended complaint.

[4] Practice Book § 10-61, entitled "Pleading after Amendment," provides: "When any pleading is amended the adverse party may plead thereto within the time provided by Section 10-8 or, if the adverse party has already pleaded, alter the pleading, if desired, within ten days after such amendment or such other time as the rules of practice, or the judicial authority, may prescribe, and thereafter pleadings shall advance in the time provided by that section. If the adverse party fails to plead further, pleadings already filed by the adverse party shall be regarded as applicable so far as possible to the amended pleading."

[5] We also note that because "[t]he design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice." Practice Book § 1-8. Further, the "[r]ules of practice must be construed reasonably and with consideration of this purpose. . . . Rules are a means to justice, and not an end in themselves; their purpose is to provide for a just determination of every proceeding." (Internal quotation marks omitted.) *Tolland Bank* v. *Larson*, 28 Conn. App. 332, 335, 610 A.2d 720 (1992). As we will discuss, had the court allowed MFR to contest the prior judgment of debt, it would have required EMC to relitigate an already established debt and it would have undermined important public policies to the contrary of such a decision.

MFR's reliance on *Antman* and *Clover Farms, Inc.*, is equally misplaced. In its appellate brief, MFR cites *Antman* for the proposition that the "filing of [an] amended complaint operate[s] as a withdrawal of the original, and thereafter the latter . . . can furnish no basis for judgment." In providing such a quotation for this court, MFR conveniently chose to omit from it the word "voluntary," which appears directly before the word "filing" in the quotation from *Antman*. *Antman* v. *Connecticut Light & Power Co.*, supra, 117 Conn. 234. Such an important omission transforms and expands the court's holding into something it is not. *Antman* unequivocally dealt with a motion to revise a plaintiff's original complaint, which was followed by the plaintiff's voluntary filing of an amended complaint. *Antman*, therefore, is factually distinguishable and lends no support to MFR's arguments. Additionally, the one paragraph per curiam decision in *Clover Farms, Inc.*, briefly addresses a motion to erase and is devoid of any factual similarity to the present case. Consequently, *Clover Farms, Inc.*, cannot support MFR's claim that in this case, "upon [the] granting of [a] motion to open, [a] prior judgment [is] rendered ineffective."

Having disposed of MFR's arguments regarding the survival of the November 24, 1997 judgment, we again note that in its memorandum of decision, the court held that "[n]othing in the court record indicates that the judgment of foreclosure by sale was ever vacated . . . [and that] any opening of the judgment was limited to a specific purpose." Because EMC's second amended complaint was ordered by the court, and its motion for leave to revise the complaint was specifically limited to the purpose of naming MFR as a substitute party to the action, the court acted within its sound discretion in deciding that the November 24, 1997 judgment of debt was opened only for limited purposes and never

was vacated.[6] Moreover, the second amended complaint conformed to the limited purpose of the court order and subsequent motion because the only addition to the complaint was the naming of MFR as a party defendant.

Thereafter, the court granted EMC's motion for summary judgment as to liability and scheduled a hearing in damages. At the hearing in damages, the court ruled the November 24, 1997 judgment of debt to be the law of the case.[7] "The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . In essence it expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . . But a determination so made is not necessarily to be treated as an infallible guide to the court in dealing with all matters subsequently arising in the cause. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Citations omitted; internal quotation marks omitted.) *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982).

In making its ruling, the court explained that the judgment of debt had not been opened and that it had

---

[6] The judgment was opened two times prior to the naming of MFR as a defendant for the limited purposes of extending the sale date and for adding Saxe as a party defendant.

[7] "The law of the case doctrine applies only to subsequent proceedings *in the same case.*" (Emphasis in original.) *Forte* v. *Citicorp Mortgage, Inc.*, 66 Conn. App. 475, 481, 784 A.2d 1024 (2001). The doctrine, therefore, applies to the present case.

been established by undisputed evidence, namely, an affidavit to which Zak took no exception. Having already conclusively established the principal debt, the court limited the hearing in damages to an adjustment for "updating the debt." Because the court, sitting in equity, was of the opinion that the judgment of debt was correctly decided and that no overriding circumstances were present to rule otherwise, we conclude that the court properly determined the judgment of debt to be the law of the case.

MFR further claims that "the default by another party . . . deprived MFR of its constitutional right to procedural due process." Specifically, MFR emphatically argues that due process requires it to get a meaningful hearing regarding all aspects of the debt because Zak's default, along with the court's subsequent determination of debt, which was based on an uncontested affidavit, cannot deprive MFR of its rights to challenge that debt. We disagree.

The "[f]undamental tenets of due process . . . require that all persons directly concerned in the result of an adjudication be given reasonable notice and the opportunity to present their claims or defenses. . . . Moreover, [t]he guarantee of procedural due process requires that persons whose rights are to be affected have a right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner." (Citation omitted; internal quotation marks omitted.) *Henriquez* v. *Allegre*, 68 Conn. App. 238, 245, 789 A.2d 1142 (2002).

Long before MFR gained any interest whatsoever in the foreclosed real estate, a notice of lis pendens was filed on the land records. "A notice of lis pendens is appropriate in any case where the outcome of the case will in some way, either directly or indirectly, affect the title to or an interest in real property. . . . As [General

Statutes] § 52-325 (a) provides, the purpose of [notice of lis pendens] is to bind any subsequent purchaser or encumbrancer as if he were made a party to the action described in the lis pendens. [A] notice of lis pendens ensures that the [litigant's] claim cannot be defeated by a prejudgment transfer of the property." (Internal quotation marks omitted.) *Cadle Co.* v. *Gabel,* 69 Conn. App. 279, 286, 794 A.2d 1029 (2002); see General Statutes § 52-325.[8]

MFR knowingly and willingly stepped into Zak's shoes when it accepted the quitclaim deed from her for the foreclosed property. Because Zak had a meaningful opportunity to be heard at a meaningful time and in a meaningful manner, MFR had the same. The notice of lis pendens served to bind MFR as if it had been a party to the foreclosure action against Zak, which was the same action during which the court received evidence regarding her liability and debt on the note and mortgage. As a result, MFR is bound by Zak's failure to plead and subsequent default, as well as by the fact that she did not contest the amount of the debt. MFR, therefore, cannot now assert defenses that Zak failed to assert.

---

[8] General Statutes § 52-325 (a), entitled "Notice of lis pendens," provides in relevant part: "In any action in a court of this state or in a court of the United States (1) the plaintiff or his attorney, at the time the action is commenced or afterwards, or (2) a defendant, when he sets up an affirmative cause of action in his answer and demands substantive relief at the time the answer is filed, if the action is intended to affect real property, may cause to be recorded in the office of the town clerk of each town in which the property is situated a notice of lis pendens, containing the names of the parties, the nature and object of the action, the court to which it is returnable and the term, session or return day thereof, the date of the process and the description of the property . . . . Such notice shall, from the time of the recording only, be notice to any person thereafter acquiring any interest in such property of the pendency of the action; and each person whose conveyance or encumbrance is subsequently executed or subsequently recorded or whose interest is thereafter obtained, by descent or otherwise, shall be deemed to be a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the recording of such notice, to the same extent as if he were made a party to the action. . . ."

In fact, MFR has no legal ground on which to stand because "[t]he doctrine underlying lis pendens is that a person who deals with property while it is in litigation does so at his peril . . . ." (Internal quotation marks omitted.) *Williams* v. *Bartlett*, 189 Conn. 471, 480, 457 A.2d 290, appeal dismissed, 464 U.S. 801, 104 S. Ct. 46, 78 L. Ed. 2d 67 (1983).

Finally, in support of its decision not to allow MFR to contest the debt, the court cited the public policy of maintaining certainty and stability in foreclosure actions. MFR, however, asserts otherwise, claiming that such policy provides no justification for the court's judgment. We respond to that argument because the facts of this case demonstrate precisely why public policy should prevent MFR from contesting what already has been determined.

As the court aptly stated, "[to] allow such postjudgment challenges to the debt would create chaos and instability to foreclosure judgments. The mere substitution of a judgment debtor and mortgagor in a foreclosure action cannot be a ground for the challenge of the judgment debt." On the other hand, MFR claims that any "instability in a prior judgment of foreclosure [in this case] was caused by the reopening of the judgment of foreclosure and the filing of an amended complaint to allow MFR to be cited in as a party . . . [and, that] MFR was not a mere substitute defendant." MFR further claims that allowing it to contest the debt would not "prevent the conclusion of . . . foreclosure action[s] by permitting . . . property to be repeatedly conveyed to other entities before there could be any final adjudication of the issues" because "the court is able to use its broad equitable powers inherent in any foreclosure action to restrain any such abuse of the foreclosure process."

MFR fails to recognize that if the court allowed it to challenge the November 24, 1997 judgment of debt, the

court would open the door for parties similarly situated to contest judgments of foreclosure. Significantly, such a decision would severely undermine the public policy underlying notices of lis pendens because it would result in making them legally impotent once the judgment debtor and mortgagor conveys the foreclosed property to a third party. That would inevitably result in delay and uncertainty for existing and future foreclosure actions while causing increased litigation and the needless expenditure of valuable judicial resources. Further, because MFR is legally considered to have been a party to all the events occurring subsequent to the filing of the lis pendens in this action, allowing MFR to contest the debt at this stage would be tantamount to giving it a second chance while unnecessarily penalizing the plaintiff by requiring it to relitigate the debt a second time; such a result is contrary to fundamental fairness. Accordingly, the public policy considerations that the court properly relied on are aimed at parties such as MFR, a mere substituted judgment debtor and mortgagor in a foreclosure action, and this case is one in which the court properly invoked such policy via its broad discretionary power in foreclosure actions.

Sitting in equity, the court properly considered all of the relevant factors in this case and acted within its sound discretion by not opening the November 24, 1997 judgment of debt and by ruling it to be the law of the case. Further, in considering the equities of this case, the court properly struck the balance in favor of EMC and the public policies underlying the stability of foreclosure actions as well as the policies underlying the notice of lis pendens. Equity favors EMC in this case, and MFR cannot now attempt to play the victim, especially in light of the fact that any interest MFR gained in the foreclosed property was acquired with full notice of all claims and judgments against it. Therefore, the

court correctly applied the law and could reasonably, in all respects, have reached the conclusions that it did.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.