# FARHAD MOASSER *v.* JAMES A. BECKER ET AL.
## (AC 22819)

Schaller, Flynn and Dupont, Js.

Argued February 21—officially released July 29, 2003

*Brenden P. Leydon,* with whom, on the brief, were *Mark F. Katz* and *Susan F. D'Elia,* for the appellant (defendant Judith Becker).

*Philip M. French,* for the appellee (plaintiff).

*Opinion*

SCHALLER, J. In this action to foreclose three judgment liens, the defendant Judith Becker[1] appeals from the trial court's judgment of foreclosure by sale. On appeal, the defendant claims that the court improperly (1) denied her motions to dismiss the action for lack of subject matter jurisdiction, (2) precluded her from relitigating an issue that had been litigated before she became a party to the action and (3) accepted an attorney trial referee's finding that the defendant had violated the Uniform Fraudulent Transfer Act (UFTA), General Statutes § 52-552a et seq.[2] We affirm the judgment of the trial court.

The plaintiff, Farhad Moasser, commenced an action against the defendant's former husband, James A. Becker, in the United States District Court for the District of Connecticut, alleging fraud. The plaintiff ultimately obtained judgments against James Becker in

[1] The named defendant, James A. Becker, is the former husband of the defendant Judith Becker. After the commencement of this action, James Becker conveyed his interest in the subject property to Judith Becker, and the court subsequently granted Judith Becker's motion to intervene. In this opinion, all references to the defendant are to Judith Becker, who is the sole appellant.

[2] The defendant's brief is divided into nineteen sections, each of which purportedly sets forth a discrete issue. A reading of the brief, however, reveals that few, if any, of those sections fully set forth distinct claims. In addition, the defendant has not stated the relevant standard of review for each claim. For those reasons, among others, the defendant's brief does not comply with Practice Book § 67-4 (d). Nevertheless, by interpreting the various sections of the brief, we have discerned what we believe are the major claims.

The defendant has attempted to raise a laundry list of other claims. Some claims are merely raised, but are not given serious analysis in the defendant's brief. With respect to other claims, the defendant lacks standing because they relate solely to rulings against other parties to the action. Other claims are based on a misunderstanding or misrepresentation of statements made in the pleadings, the attorney trial referees' reports or the court's rulings. We determine that all such claims are so lacking in merit that they do not warrant our addressing them in the body of this opinion.

1988 and 1989. At that time, James Becker was married to the defendant, and they were joint tenants of a residence (property) located in Stamford. The plaintiff obtained three judgment liens on James Becker's interest in the property, all of which were recorded in the Stamford land records. In 1992, the plaintiff commenced the present action in the Superior Court, seeking to foreclose the three judgment liens. Additional facts are set forth as necessary for the resolution of the defendant's claims.

I

We first consider the defendant's claim that the court improperly denied her motions to dismiss for lack of subject matter jurisdiction. Specifically, the defendant argues that the court lacked subject matter jurisdiction over the plaintiff's foreclosure action because the plaintiff failed to register the underlying federal District Court judgment as a state court judgment pursuant to the Uniform Enforcement of Foreign Judgments Act (UEFJA), General Statutes § 52-604 et seq. We are not persuaded.

The following procedural history is relevant to the defendant's claim. The plaintiff brought this action to foreclose the three judgment liens he obtained as a result of his previous action against James Becker in the United States District Court for the District of Connecticut. The present case was tried before attorney trial referee Alfred H. Hoddinott, Jr., in December, 2000, and January, 2001.[3] At trial, the plaintiff introduced certified copies of the certificates of the three judgment liens. The plaintiff did not present any evidence showing that the underlying District Court judgments had been made judgments of the Connecticut Superior Court pursuant to the provisions of the UEFJA.

---

[3] The case previously had been tried to attorney trial referee Mary E. Sommer on January 5, 1995. See part II.

On January 16, 2001, the defendant filed a motion to dismiss for lack of subject matter jurisdiction on the ground that the plaintiff did not have an enforceable Connecticut Superior Court judgment. The plaintiff filed a memorandum of law in opposition to the motion to dismiss in which he advanced several distinct grounds for denial of the motion to dismiss. The court denied the defendant's motion to dismiss without a memorandum of decision on March 26, 2001. The defendant did not request an articulation of the court's reasoning in denying the motion.[4]

In her trial brief submitted to Hoddinott on February 6, 2001, the defendant again challenged the court's subject matter jurisdiction on the ground that the plaintiff did not have an enforceable Superior Court judgment. In his June 11, 2001 report, Hoddinott noted that the issue was controlled by the court's March 26, 2001 denial of the defendant's motion to dismiss. Hoddinott further stated that he saw no reason to revisit that ruling. On August 15, 2001, the defendant filed objections to acceptance of Hoddinott's report, in which she objected to Hoddinott's failure to revisit the issue of the court's subject matter jurisdiction. The court rendered judgment in accordance with the referee's report on January 14, 2002.

On February 1, 2002, the defendant filed another motion to dismiss on the ground that the plaintiff had failed to establish at trial that he had an enforceable Connecticut Superior Court judgment. The court denied the motion to dismiss on May 16, 2002, indicating in a handwritten notation that "[t]he claim of lack of an enforceable judgment was previously rejected in the memorandum of decision of January 14, 2002."

We begin our analysis by setting forth the applicable standard of review. "A determination regarding a trial

---

[4] The defendant filed a motion for reargument of the motion to dismiss on July 5, 2001, which the court denied on May 17, 2002.

court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 485, 815 A.2d 1188 (2003).

Before proceeding to address the merits of the defendant's claim, we must determine whether the record is adequate for us to review the court's rulings. Although the court did not articulate its reasoning for denying the defendant's motions to dismiss, it is undisputed that the plaintiff did not register his judgment pursuant to the UEFJA. The plaintiff's failure to register the judgment pursuant to the UEFJA was the sole basis for the defendant's motions to dismiss. Consequently, the defendant's motions to dismiss presented a single pure question of law, namely, whether a judgment of an in-state federal court must be registered pursuant to the UEFJA as a jurisdictional prerequisite to commencing an action in state court to foreclose the federal judgment lien. Under such circumstances, the lack of an articulation by the trial court of its precise reasoning for denying the motions to dismiss is not fatal to the defendant's claim. Cf. *Niehaus* v. *Cowles Business Media, Inc.*, 263 Conn. 178, 184–85, 819 A.2d 765 (2003).

We now turn to the merits of the defendant's claim. The defendant argues that the court lacked subject matter jurisdiction over the plaintiff's foreclosure action because the plaintiff failed to register the judgment of the United States District Court for the District of Connecticut as a state court judgment pursuant to the UEFJA. Whether the UEFJA requires a judgment creditor to register in the Superior Court an in-state federal judgment lien presents a question of statutory construction.

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 290, 819 A.2d 260 (2003).

We begin with the language of the UEFJA. General Statutes § 52-605 (a) provides: "A judgment creditor shall file, with a certified copy of a foreign judgment, in the court in which enforcement of such judgment is sought, a certification that the judgment was not obtained by default in appearance or by confession of judgment, that it is unsatisfied in whole or in part, the amount remaining unpaid and that the enforcement of such judgment has not been stayed and setting forth the name and last-known address of the judgment debtor." General Statutes § 52-605 (b) provides: "Such foreign judgment shall be treated in the same manner as a judgment of a court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of a court of this state and may be enforced or satisfied in like manner." "Foreign judgment" is defined in General Statutes § 52-604 as "any judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this state, except one obtained by default in appearance or by confession of judgment."

It is not clear from reading those provisions whether the legislature intended to require the registration of an in-state federal judgment as a jurisdictional prerequisite to the filing of an action to foreclose a lien arising from the judgment. Case law, however, provides some useful guidance as to the meaning of the statutory language. Our courts have concluded, despite the language of § 52-605 (a) providing that a foreign judgment creditor "shall file" a foreign judgment in the court in which enforcement is sought, that the provisions of the UEFJA are not exclusive, and a judgment creditor still may seek recognition of a foreign judgment by way of a common-law action on the judgment. See *Tri-State Tank Corp.* v. *Higganum Heating, Inc.*, 45 Conn. App. 798, 802, 699 A.2d 201 (1997); *Seaboard Surety Co.* v. *Waterbury*, 38 Conn. Sup. 468, 470, 451 A.2d 291 (1982). Those authorities are not directly on point because they are based on the specific statement in General Statutes § 52-607 that "[t]he right of a judgment creditor to proceed by an action on the judgment . . . remains unimpaired." They are instructive, however, because they suggest that even in the case of a judgment clearly falling within the statutory definition of "foreign judgment,"[5] the provisions of the UEFJA do not establish a mandatory jurisdictional prerequisite to recognition of the judgment by our courts.

The legislative policy behind the UEFJA is also instructive. The purpose of the uniform act is set forth in the drafters' prefatory note: "Court congestion is a problem common to all states. Overcrowded dockets, overworked judges and court officials, with attendant delays, inevitably tend to lower standards for the admin-

---

[5] The plaintiff argues that in-state federal judgments are not within the definition of "foreign judgment" as set forth in General Statutes § 52-604. Because we conclude that the legislature did not intend to require registration under the UEFJA under the circumstances of the present case, we need not determine whether in-state federal judgments generally fall within the definition of "foreign judgment" under § 52-604.

istration of justice. One of the things that contributes to calendar congestion is the Federal necessity of giving full faith and credit to the judgments of courts of other states. . . . While there is no constitutional requirement that a debtor who has had a full due process trial in one state need be given a second full scale trial on the judgment in another state, this is the only course available to creditors. The usual practice requires that an action be commenced on the foreign judgment. The full procedural requirements apply to the second action." Uniform Enforcement of Foreign Judgments Act (1964), Prefatory Note, 13-I U.L.A. 156.

The drafters further stated: "This . . . revision of the Uniform Enforcement of Foreign Judgments Act adopts the practice which, in substance, is used in Federal courts. It provides the enacting state with a speedy and economical method of doing that which it is required to do by the Constitution of the United States. It also relieves creditors and debtors of the additional cost and harassment of further litigation which would otherwise be incident to the enforcement of the foreign judgment." Id., 157. Thus, the UEFJA was intended to provide foreign judgment creditors with a speedy, inexpensive and efficient method for enforcing foreign judgments; it was not intended to limit the availability of existing remedies available to judgment creditors.

Finally, we examine the legislative history of the UEFJA and its relationship to existing federal and state legislation governing judgment liens. When our legislature enacted the UEFJA in 1973; see Public Acts 1973, No. 73-498; there was already federal precedent governing federal judgment liens. Traditionally, a federal court judgment constituted a lien on all of the judgment debtor's real property within the territorial jurisdiction of the court. See *Massingill* v. *Downs*, 48 U.S. (7 How.) 760, 766, 12 L. Ed. 903 (1849). Section 1962 of title 28 of the United States Code, which modifies that rule,

provides in relevant part: "Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. . . . Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State."

The United States Supreme Court construed what is now 28 U.S.C. § 1962 in *Rhea* v. *Smith*, 274 U.S. 434, 47 S. Ct. 698, 71 L. Ed. 1139 (1927). That case concerned Missouri's statutory scheme governing judgment liens. Pursuant to the Missouri statute, a Missouri state trial court judgment automatically became a lien on the judgment debtor's property located in the county in which the court sat. Id., 441. Under the same statute, however, a judgment of a federal court located in Missouri did not become a lien until the judgment creditor filed a transcript of the judgment in the office of the clerk of the trial court. Id.

The United States Supreme Court held that litigants who obtained judgments in federal court in Missouri were not required to follow the filing procedures prescribed by the Missouri statute. The court explained: "It is clear that Congress by [passing the predecessor to 28 U.S.C. § 1962] intended to change and limit the existing rule, as stated . . . in *Massingill* v. [*Downs*], supra, [48 U.S. 760] that federal court judgments were a lien upon lands throughout the territorial jurisdictions

of the respective federal courts, but intended to do this only in those States which passed laws making the conditions of creation, scope and territorial application of the liens of federal court judgments the same as state court judgments, so that where any State has not passed such laws, the rule that federal judgments are liens throughout the territorial jurisdiction of such courts must still be in force." *Rhea* v. *Smith*, supra, 274 U.S. 441. The court concluded that because the Missouri statute failed to provide the conformity required by the federal statute, a federal judgment rendered in the state of Missouri automatically became a lien on all of the judgment debtor's real property throughout the state. Id., 444–45.

An examination of our own statutes reveals a legislative intent to achieve the conformity necessary to make the procedures for the recording of state judgment liens applicable to in-state federal judgment liens under 28 U.S.C. § 1962. Pursuant to General Statutes § 52-380a (a), a judgment lien attaches to the real property of a judgment debtor when the judgment creditor records a judgment lien certificate in the office of the clerk of the town in which the real property lies.[6] A lien so recorded "may be foreclosed or redeemed in the same manner as mortgages on the same property. . . ." General Statutes § 52-380a (c). By virtue of General Statutes § 47-36, enacted in 1953, the legislature has authorized federal court judgments to be recorded in a town's records and indexed and released in the same manner as state court judgments, thus achieving the conformity anticipated by 28 U.S.C. § 1962.

The defendant argues that the UEFJA requires a litigant who has obtained a judgment in a federal court in Connecticut to register the judgment in state court

---

[6] The defendant concedes that the liens in the present case were in the form prescribed by General Statutes § 52-380a.

before commencing a foreclosure proceeding. The UEFJA, which applies only to "foreign judgments" as defined in § 52-604, obviously does not require the registration of Connecticut state court judgments. The implication of the defendant's argument, therefore, is that the legislature, in enacting the UEFJA, intended to apply to in-state federal judgment liens a registration requirement that did not apply to Connecticut state court judgment liens. Such an enactment by the legislature, however, would be inconsistent with the legislature's intent, as demonstrated in § 47-36, to achieve the conformity required by 28 U.S.C. § 1962. It would, in fact, destroy that conformity.

"[W]e are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . Legislation never is written on a clean slate, nor is it ever read in isolation or applied in a vacuum. Every new act takes its place as a component of an extensive and elaborate system of written laws. . . . Construing statutes by reference to others advances [the values of harmony and consistency within the law]. In fact, courts have been said to be under a duty to construe statutes harmoniously where that can reasonably be done. . . . Accordingly, [i]f two statutes appear to be in conflict but can be construed as consistent with each other, then the court should give effect to both." (Citations omitted; internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 157, 788 A.2d 1158 (2002). We cannot conclude that the legislature, in enacting the UEFJA, intended to destroy the conformity it had previously achieved when it enacted § 47-36.

We conclude that the UEFJA does not require the registration of an in-state federal court judgment as a jurisdictional prerequisite to the commencement of an action to foreclose a lien arising from that judgment. As stated, that conclusion is fully consistent with the

language of the UEFJA and its underlying policy. More-
over, our interpretation prevents the UEFJA from con-
flicting with other statutes, namely, § 47-36 and 28
U.S.C. § 1962. Accordingly, the plaintiff was not
required to register his federal court judgment under
the UEFJA prior to commencing his foreclosure action,
and his failure to do so did not deprive the court of
subject matter jurisdiction.[7] The court therefore prop-
erly denied the defendant's motions to dismiss.

II

The defendant claims that the court improperly pre-
cluded her from relitigating an issue that had been liti-
gated before she became a party to this action.
Specifically, she claims that she was entitled to relitigate
the validity of a mortgage in favor of Connecticut
National Bank (bank) on the subject property. The
defendant advances two arguments in support of that
claim. First, she argues that the court, in granting her
motion to intervene in this action, improperly limited
the scope of her intervention by precluding her from
relitigating the validity of the bank's mortgage. Second,
she argues that the court improperly accepted the refer-
ee's subsequent decision declining to revisit that issue

_____

[7] In further support of her argument that the plaintiff is barred from
pursuing foreclosure because he has not registered his judgment under the
UEFJA, the defendant cites to General Statutes § 52-380a (c), which provides
in relevant part: "No action to foreclose a judgment lien filed pursuant to
this section may be commenced unless an execution may issue pursuant
to section 52-356a. . . ." The defendant argues that an execution may not
issue pursuant to General Statutes § 52-356a in the present case because
§ 52-356a (a) authorizes execution on state court judgments, but not federal
court judgments. We conclude that the phrase "unless an execution may
issue pursuant to section 52-356a" merely makes actions for foreclosure of
judgment liens, like executions against personal property pursuant to § 52-
356a, "subject to the expiration of any stay of enforcement and expiration
of any right of appeal . . . ." General Statutes § 52-356a (a). Consequently,
we find no merit to the defendant's argument.

after the plaintiff had filed two amended complaints.[8] We address those two arguments in turn.

## A

The defendant argues that the court, in granting her motion to intervene, improperly limited the scope of her intervention by precluding her from relitigating the validity of the bank's mortgage. We are not persuaded.

The following additional facts are relevant to that issue. The plaintiff originally commenced this action against the defendant's former husband, James Becker, who at that time was the owner of the subject property. The defendant originally was not named or served as a party to the action. In the original complaint, the plaintiff alleged that the bank claimed an interest superior to the plaintiff's interest in the subject property by virtue of a mortgage dated June 10, 1985, and recorded in the Stamford land records. The plaintiff further alleged that the bank's interest was void or unenforceable for lack of consideration. On December 8, 1994, the bank was defaulted for failure to appear at a pretrial conference. The case was tried to attorney trial referee Mary E. Sommer on January 5, 1995. In her report of July 10, 1995, Sommer found that the bank's mortgage was unenforceable on the basis of both the evidence presented at trial and the previous default for failure to appear at the pretrial conference. The court accepted Sommer's report on November 2, 1995.

Meanwhile, on July 26, 1995, the defendant filed an appearance and a motion to intervene on the ground that she was an equity owner of the subject premises. In her memorandum in support of the motion, the defendant argued that because she was a co-obligor with

---

[8] The defendant also argues that she should not have been collaterally estopped from relitigating the validity of the bank's mortgage. Our review of the record, however, reveals that collateral estoppel was not the basis of any ruling by the court.

regard to the bank's mortgage, she should have been made a party to the plaintiff's foreclosure action, which sought, inter alia, to invalidate that mortgage. In an opposing memorandum filed on August 21, 1995, the plaintiff argued that the defendant's motion should be denied as untimely.

In a supplemental memorandum of law filed on July 19, 1996, nearly one year after her original motion to intervene, the defendant argued that her motion was not untimely because the plaintiff had neglected to file a notice of lis pendens. She argued further that she should be permitted to join the action because she was the sole owner of the equity of redemption by virtue of a March 1, 1994 quitclaim deed from James Becker. The plaintiff filed an opposing memorandum on July 30, 1996, in which he asserted that the defendant had received actual notice of the foreclosure action years before she filed her motion to intervene and that the motion therefore was untimely. The plaintiff submitted with his memorandum a copy of a May 11, 1993 letter to the plaintiff's attorney in which the attorney representing both the defendant and James Becker made reference to the action.

In its September 17, 1996 memorandum of decision on the defendant's motion to intervene, the court stated: "[The defendant] has not contested [the] plaintiff's claim that she had actual knowledge of this action as early as May, 1993. . . . Nevertheless, the aggregate of her interests in the property, especially her cotenant status, warrant the granting of her motion so that she may receive an opportunity to redeem despite the late filing of her motion.

"On the other hand, the plaintiff correctly insists that a court of equity should not allow [the defendant's] intervention to further delay this case by permitting her to relitigate adjudicated issues when she could have

been a party to this action earlier except for her own, unexplained, dilatory behavior. This court agrees with the plaintiff that [the defendant] has asserted her rights without diligence and in a piecemeal fashion; this conduct is evidenced, among other things, by the 1994 assignments themselves, which should have prompted her to investigate and protect her interests." Accordingly, the court granted the defendant's motion to intervene, but ruled that she was precluded from relitigating the validity of the bank's mortgage or "any other matters which are the law of the case."

The defendant now claims that the court improperly limited her intervention by precluding her from relitigating the validity of the bank's mortgage. It is well established that "[a]ny motion for intervention, whether permissive or of right,[9] must be timely. . . . Timeliness of intervention is a matter for the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Washington Trust Co.* v. *Smith*, 241 Conn. 734, 744, 699 A.2d 73 (1997). "The necessity for showing that a would-be intervenor made a timely request for intervention involves a determination of how long the intervenor was aware of an interest before he or she tried to intervene, any prejudicial effect of intervention on the existing parties, any prejudicial effect of a denial on the applicant and consideration of any unusual circumstances either for or against timeliness. . . . There are no absolute ways to measure timeliness." (Citation omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 146–47, 758 A.2d 916 (2000).

Our Supreme Court, in *Washington Trust Co.* v. *Smith*, supra, 241 Conn. 744–45, emphasized that "[i]n

---

[9] The court did not expressly determine whether the defendant moved to intervene under a theory of permissive intervention or intervention of right. For the purpose of the present analysis, we assume arguendo that the defendant moved for intervention as a matter of right.

making [the] determination of timeliness with respect to motions to intervene as a matter of right, courts must take into consideration the nature of the interest and for what purpose the intervenor is seeking to be brought into the action." *Washington Trust Co.* was a mortgage foreclosure action in which two persons seeking to protect their claimed rights of redemption sought intervention after the foreclosure sale, but before the trial court's confirmation of the sale. Id., 745. The Supreme Court stated: "[I]f the purpose of the intervention, under the facts of this case, was to challenge the validity of [the plaintiff's] right to foreclose on the mortgage, when the intervening parties had timely notice of the foreclosure action, then the granting of the motions to intervene at the late date they were presented would be a significant factor for the trial court to consider when ruling on the motions. The dilatory nature of a motion to intervene is always a factor for a trial court to consider." Id. In light of the prospective intervenors' purpose of protecting their rights of redemption, however, the Supreme Court concluded that the trial court had abused its discretion in denying the motions to intervene because those rights could be exercised at any time prior to the confirmation of the foreclosure sale. Id.

The Supreme Court's reasoning is directly applicable to the present case. Here, the court found that the defendant had actual knowledge of the action as early as May, 1993. The defendant has not disputed that fact, either before the trial court or on appeal. Nevertheless, the defendant did not move to intervene until July 26, 1995, more than two years after she had received actual notice of the action and six months after the case had gone to trial. The court further stated that James Becker's conveyance of his interest in the property to the defendant in 1994 should have prompted her to investigate and to protect her interests. Nevertheless, the court permitted the defendant to intervene "so that she

[would] receive an opportunity to redeem . . . ." The court's action was consistent with the Supreme Court's statement in *Washington Trust Co.* v. *Smith*, supra, 241 Conn. 744–45, that a motion to intervene that is timely for one purpose may nevertheless be untimely for another purpose.

We conclude that the court properly ruled that the defendant's motion to intervene was untimely to the extent that it sought to relitigate the validity of the bank's mortgage. That issue had been tried more than six months earlier, and the defendant failed to intervene for more than two years after receiving actual notice of the action. Consequently, the court did not abuse its discretion in limiting the defendant's intervention by precluding her from relitigating that issue.

## B

The defendant further argues that the court improperly accepted the attorney trial referee's determination that the plaintiff's filing of two amended complaints after the defendant's intervention did not open the pleadings as to all issues. We are not persuaded.

The following additional facts are relevant to the resolution of that issue. As previously stated, the court rendered judgment in accordance with Sommer's report on November 2, 1995. The defendant, in support of her motion to intervene, represented to the court that James Becker had conveyed to her his interest in the subject property. At that time, the defendant further represented to the court that the bank's mortgage had been conveyed, and she submitted a copy of a deed that conveyed the bank's mortgage to one "Jeanne Altschul, trustee."[10] The court granted the motion to intervene on September 17, 1996.

---

[10] Altschul is the mother of the defendant's attorney.

The plaintiff filed an amended complaint on October 7, 1996, adding allegations regarding the defendant's ownership of the subject property with James Becker. In a second amended complaint, filed on June 7, 1999, the plaintiff added allegations regarding James Becker's assignment to the defendant of his remaining interest in the subject property. In addition, the plaintiff alleged the assignment of the bank's mortgage to Altschul. The second amended complaint also added a paragraph alleging that the conveyances to the defendant and to Altschul, as well as the failure of Altschul and the defendant to intervene in a timely manner, were part of a continuing plan to hinder the plaintiff in collecting on his judgment. On July 30, 1999, Altschul filed a counterclaim and cross complaint, alleging, inter alia, that the bank's mortgage, which had been assigned to her, was prior in right to the plaintiff's judgment liens, and seeking foreclosure of that mortgage.

The case was tried for a second time before a different attorney trial referee, Hoddinott, in December, 2000, and January, 2001. At trial, Hoddinott gave the defendant a full opportunity to present evidence demonstrating that Sommer was incorrect in finding the bank's mortgage invalid. Subsequently, in her trial brief, the defendant argued that the court's order precluding her from relitigating the validity of the bank's mortgage was no longer binding as a result of the plaintiff's filing of the two amended complaints.

In his report, Hoddinott rejected what he described as the defendant's "notion that the mere filing of an amended pleading, without more, somehow unravels the entire history of the case . . . ." Hoddinott noted that as to the issues tried before Sommer, the amended complaints did nothing more than add additional parties. He also found that the defendant had failed to show any new and overriding circumstance that would justify relitigation of the validity of the bank's mortgage.

He concluded that the defendant was bound by the court's previous order barring her from relitigating that issue.[11] Over the defendant's objections, the court rendered judgment in accordance with Hoddinott's report on January 14, 2002.

"We review the court's decision not to open the pleadings as to all issues under an abuse of discretion standard. . . . Further, [a] foreclosure action constitutes an equitable proceeding. . . . In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . This court must make every reasonable presumption in favor of the trial court's decision when reviewing a claim of abuse of discretion. . . . Our review of the trial court's exercise of legal discretion is limited to the question of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Webster Bank* v. *Zak*, 71 Conn. App. 550, 556–57, 802 A.2d 916, cert. denied, 261 Conn. 938, 808 A.2d 1135 (2002). When a defendant relies on an amended complaint as the vehicle for opening the judgment as to all issues in the

---

[11] Hoddinott considered in the alternative the evidence and arguments offered by the defendant at trial regarding the validity of the bank's mortgage and concluded that the defendant had failed to demonstrate that Sommer incorrectly found a lack of consideration. In addition, he noted that even if the evidence showed sufficient consideration, Sommer had found the bank's mortgage invalid on a second independent ground, namely, the prior default that had entered against the bank. Hoddinott noted that the default had never been opened and concluded that it continued to provide an independent ground for finding the bank's mortgage invalid. We need not consider those additional determinations by Hoddinott because our conclusion that the court properly accepted Hoddinott's determination that the amended complaints did not open the case as to the issues previously litigated is dispositive.

case, we focus our attention on that complaint and its attendant circumstances. Id., 557.

We have stated that "[t]he *voluntary* filing of an amended complaint operates as a withdrawal of the prior complaint, and, thereafter, the earlier complaint, though remaining in the files and constituting part of the history of the case, can furnish no basis for a judgment, nor can any previous ruling on it be made a subject of appeal." (Emphasis added.) *Connecticut Bank of Commerce* v. *Giordano*, 67 Conn. App. 79, 81, 787 A.2d 9 (2001), cert. denied, 259 Conn. 929, 793 A.2d 253 (2002). In *Webster Bank* v. *Zak*, supra, 71 Conn. App. 550, the plaintiff mortgagee filed an amended complaint in response to the court's granting of a motion by the assignee of the equity of redemption to intervene as a defendant after the court rendered a judgment of foreclosure by sale. Id., 553. The court had ordered the filing of the amended complaint; id., 559; the sole purpose of which was to add an allegation regarding the conveyance of the equity to the intervening assignee. Id. The assignee claimed that the filing of the amended complaint opened and vacated the entire judgment. The court disagreed and therefore determined that the assignee was bound by the findings underlying the previous judgment of foreclosure by sale. Id., 556.

On appeal, we concluded that the amended complaint was "compulsory in nature and not voluntary." Id., 557. That conclusion was based both on the fact that the court had ordered the filing of the complaint; id., 559; and on the fact that "but for [the assignee's] motion to be cited in, [the plaintiff] never would have had to file the second amended complaint." Id., 557. In addition, we stated that the amended complaint "conformed to the limited purpose of the court order and subsequent motion [for leave to file the amended complaint] because the only addition to the complaint was the naming of [the assignee] as a party defendant." Id.,

560. For those reasons, we held that the court had not abused its discretion in not opening the pleadings as to all issues.

In the present case, the court did not order the filing of the amended complaints, and the plaintiff added a new paragraph alleging new facts in his second amended complaint. Nevertheless, we conclude that the amendment in the present case was not *voluntary*. The granting of the defendant's motion to intervene appears to have been the sole impetus for adding the allegation in the first amended complaint regarding the defendant's coownership of the equity of redemption. In addition, all of the new allegations in the second amended complaint were necessitated by the conveyances to the defendant and to Altschul, which occurred long after the filing of the original complaint, and which were raised by the defendant in connection with her motion to intervene. But for those conveyances and that motion, the plaintiff would not have needed to file the amended complaint. We conclude that the court did not abuse its discretion when it accepted Hoddinott's conclusion that the plaintiff's filing of the two amended complaints did not open the pleadings as to all issues.[12] The court properly precluded the defendant from relitigating the validity of the bank's mortgage, which had been litigated long before she became a party to the action.

### III

The defendant claims that the court improperly accepted Hoddinott's finding that she violated the

---

[12] In her brief, the defendant also challenges Hoddinott's adoption of Sommer's conclusion that the bank's mortgage was unenforceable for lack of consideration. Because we have already determined that the court properly accepted Hoddinott's determination that the defendant was precluded from relitigating that issue, we need not determine whether Hoddinott was correct when he determined, in the alternative, that Sommer's previous ruling was correct on the merits.

UFTA. We decline to review that claim because it is inadequately briefed.

Although Hoddinott's finding of fraud was based entirely on the UFTA,[13] the defendant's brief is entirely devoid of any reference to or analysis under the statute. The defendant merely asserts that Hoddinott's conclusions are not supported by the evidence at trial, but fails to elaborate on why the evidence was insufficient to establish any of the grounds for liability under the UFTA. In fact, the brief does not contain citations to any authority whatsoever on the issue.

"We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Internal quotation marks omitted.) *State* v. *Van Eck*, 69 Conn. App. 482, 493, 795 A.2d 582, cert. denied, 260 Conn. 937, 802 A.2d 92, cert. denied, 261 Conn. 915, 806 A.2d 1057 (2002). For that reason, we consider the defendant's claim challenging the finding that she violated the UFTA to be abandoned and, accordingly, decline to afford it review.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.

---

[13] Hoddinott concluded that the plaintiff did not prove common-law fraud.