LEONARD P. COTTIERO ET AL. *v.* DONALD W. IFKOVIC, JR., ET AL.

(12997)

FOTI, LAVERY and HEIMAN, Js.

Argued May 31—decision released August 30, 1994

*Gerald L. Garlick,* for the appellant (defendant Chemical Bank).

*Raymond A. Garcia,* with whom was *Gregory R. Faulkner,* for the appellees (plaintiffs).

HEIMAN, J. The defendant Chemical Bank appeals from the judgment of strict foreclosure rendered by the trial court.[1] On appeal, the defendant claims that the trial court improperly determined that its mortgage was not entitled to priority over the plaintiffs' mortgage because (1) the defendant is entitled to equitable subrogation, (2) the plaintiffs were unjustly enriched, (3) the plaintiffs' mortgage secured an antecedent debt, and (4) the plaintiffs received their mortgage after the grantor had conveyed the deed to the land to the defendant Donald W. Ifkovic, Jr. We affirm the judgment of the trial court.

The parties stipulated to the following facts. In 1986, Harry P. Sund, Leonard Cottiero and Jacqueline Cottiero formed a partnership named Sundcott for the purpose of purchasing property to start a restaurant in Branford to be called "Harlow's." The restaurant opened but went out of business in 1988, eighteen months after opening. Sund and the Cottieros accrued trade debts of approximately $190,000 by the time the restaurant closed. The two parties agreed to divide the indebtedness. The Cottieros paid their share of the debt. The Cottieros also agreed to lend Sund $95,000 to pay his half of the debt. On May 17, 1989, Sund delivered a note and two mortgages to the Cottieros that evidenced the $95,000 debt owed by Sund to the Cottieros and gave the Cottieros an interest in property owned by Sund at 34 Pawson Trail and 3 Waverly Road in

[1] The plaintiffs are Leonard Cottiero and Jacqueline Cottiero. The defendants in the foreclosure action are Donald W. Ifkovic, Jr., Teddy VanDerHorst, Johannes VanDerHorst and Chemical Bank. Only Chemical Bank appealed. We refer in this opinion to Chemical Bank as the defendant.

Branford. At the time of this transaction, Branford Savings Bank held a mortgage on the property located at Waverly Road. On May 24, 1989, Sund made an interest payment on the note to the Cottieros. On June 12, 1989, Sund sold the property located at 3 Waverly Road to Donald W. Ifkovic, Jr., conveying title by warranty deed. Ifkovic paid Sund $235,000 for the property, $152,282.15 to Branford Savings Bank in satisfaction of their mortgage and the balance to Sund. Ifkovic gave Chemical Bank a mortgage on the property for $184,000. On June 15, 1989, the Cottieros accepted the mortgages delivered by Sund and caused the mortgages to be recorded in the Branford land records. On June 20, 1989, eight days after delivery, Chemical Bank had its mortgage from Ifkovic recorded in the Branford land records. Sund paid the Cottieros until February, 1990, and filed bankruptcy on May 10, 1990.

By complaint dated April 26, 1991, the plaintiffs sought to foreclose on the two properties. Ifkovic and Chemical Bank challenged the validity of the plaintiffs' mortgage and the priority of the plaintiffs' debt to their mortgage on the Waverly Road property. They claimed that the plaintiffs' mortgage was not valid because the mortgage was given for an antecedent debt and not based on sufficient consideration. They also claimed that their warranty deed was filed in the land records within a reasonable time after its execution, even though it was filed after the Cottieros had filed their mortgage, and, thus, they claimed priority over the Cottieros' mortgage. After a full evidentiary hearing, the trial court found Sund "to be astute yet not to be believed" and believed the Cottieros' testimony that Sund never told them of his pending sale of the property to Ifkovic. Further, the trial court found that the Cottieros' mortgage did not secure an antecedent debt because the mortgage "finalized the transaction

between the Cottieros and Sund. The security given was not for previous loans. It was one transaction that took two months to finalize that under the present circumstances of the facts in this case was not unreasonable." The trial court also found that Chemical Bank did not file its mortgage within a reasonable time. Since the bank did not file the mortgage until June 20, 1989, the trial court found that the mortgage was not filed within a reasonable time. On the basis of these findings, the trial court rendered a judgment of strict foreclosure of the property located on Waverly Road. Only the defendant bank appealed.

I

The defendant claims that the trial court improperly determined that its mortgage was not entitled to priority over the plaintiffs' mortgage under the doctrine of equitable subrogation. We are unable to review this claim because it was not properly preserved in the trial court.

Although the defendant pleaded equitable subrogation as a special defense, the trial court's memorandum of decision makes no mention of this issue. "Our rules of practice require that the trial court state its decision on each issue in the case and its conclusion as to each issue in the case and its conclusions as to each claim of law raised by the parties. Practice Book § 4059. . . . Since this issue was presented to the trial court in the [defendant's] pleadings . . . we conclude that it was raised within the meaning of Practice Book § 4059. . . . The [defendant], however, did not assign as error the trial court's failure to rule on this claim of law nor did [it] seek, by motion for articulation in the trial court . . . to have the trial court address this issue." (Citations omitted.) *McLaughlin* v. *Bronson,* 206 Conn. 267, 277, 537 A.2d 1004 (1988). If the trial court had refused to articulate the ruling on the claim of law,

the defendant could have sought review by this court of the adequacy of the trial court's memorandum of decision. *Holmes* v. *Holmes,* 32 Conn. App. 317, 321, 629 A.2d 1137, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993). "It remains the appellant's responsibility to furnish an adequate appellate record. Practice Book § 4061. Because the deficiency of the record regarding this claim should have been remedied by the [defendant], we will not remand the case to the trial court for rectification." *Southington* v. *State Board of Labor Relations,* 210 Conn. 549, 564, 556 A.2d 166 (1989); *McLaughlin* v. *Bronson,* supra, 278. The trial court decided only that the Cottieros' mortgage did not secure an antecedent debt and that they were not unjustly enriched by the foreclosure.

The trial court's memorandum of decision on the issue of unjust enrichment does not cure the lack of discussion on equitable subrogation. "Subrogation is . . . a remedy which equity gives to aid in the enforcement of a right either legal or equitable and if there is a right the application of the remedy does not require the existence of any other ground of equitable relief." *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.,* 123 Conn. 232, 241, 193 A. 769 (1937). "The object of subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it." 10 S. Williston, Contracts (3d Ed. Jaeger 1970) § 1265. On the other hand, "[u]njust enrichment applies 'wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract.' 5 Williston, Contracts (Rev. Ed.) § 1479. 'A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity

and good conscience for one to retain a benefit which has come to him at the expense of another. *Franks* v. *Lockwood,* 146 Conn. 273, 278, 150 A.2d 215 [1959]; *Schleicher* v. *Schleicher,* 120 Conn. 528, 534, 182 A. 162 [1935].' *Connecticut National Bank* v. *Chapman,* 153 Conn. 393, 399, 216 A.2d 814 [1965]." *Providence Electric Co.* v. *Sutton Place, Inc.,* 161 Conn. 242, 246, 287 A.2d 379 (1971); *Burns* v. *Koellmer,* 11 Conn. App. 375, 383, 527 A.2d 1210 (1987). Thus, an analysis of the defendant's claim under the doctrine of unjust enrichment cannot be interpreted to include equitable subrogation. Therefore, there is no adequate record on which to afford review of this claim.[2]

## II

The defendant also claims that the trial court improperly determined that its mortgage was not entitled to priority over the plaintiffs' mortgage under the doctrine of unjust enrichment. Since the defendant failed to preserve this claim properly in the trial court, we are unable to review it.

[2] The dissent asserts that the trial court did address a claim of equitable subrogation, thereby providing an adequate record, by including in its memorandum of decision the statement that "it would be unfair and unjust to rearrange the priorities in this case to give the bank, a later recorded mortgage, a superior right of enforcement because of the unexplained and unreasonable recording of its mortgage." Starting with the assertion that this sufficiently provides an adequate record, the dissent then asserts that we refuse to review the claim because the trial court failed to use, in "talismanic fashion," the phrase "equitable subrogation." This distorts the meaning of the court's opinion. What we do require, unlike the dissent, is a collection of meaningful words in the trial court's memorandum of decision that we can properly interpret as a legal discussion of the claim, rather than to grasp at legal straws in an attempt to reach, perhaps, a more satisfying result. The paragraph in the trial court's opinion that the dissent points to as evidence of the resolution of the equitable subrogation issue, we conclude, is nothing more than the trial court's discussion as to whether the bank recorded its mortgage within a reasonable time. We decline to extend that statement beyond its logical significance.

Chemical Bank did not raise this issue in the trial court. The defendant Ifkovic did argue an unjust enrichment claim. The claim by Ifkovic, however, does not preserve the claim for Chemical Bank. Practice Book § 285A provides in relevant part: "If a party intends to raise any claim of law which may be the subject of an appeal, *he* must either state the same distinctly to the court before his argument is closed or state it in a written trial brief. If this is not done, it will not be the duty of either the trial court or the appellate court to decide the claim." (Emphasis added.) Similar language contained in Practice Book § 315 has been interpreted not to allow a defendant to rely on the claim of another defendant to preserve a claim of law. *Howe v. Neal,* 145 Conn. 187, 190, 140 A.2d 318 (1958).[3] Thus, Chemical Bank did not properly preserve this claim in the trial court and we are unable to review it.

## III

The defendant next claims that the trial court improperly determined that its mortgage was not entitled to priority over the plaintiffs' mortgage because the plaintiffs' mortgage secured an antecedent debt and Sund executed and delivered a mortgage to the plaintiffs without possessing an interest in the land.

It has long been the law in Connecticut that the validity of a mortgage does not depend on the moment that the underlying debt was created. "It is immaterial whether the indebtedness was created at the very instant the mortgage was executed or had been in existence for some time before that time. In either event the indebtedness was then in existence." *Thomaston*

---

[3] Practice Book § 315 provides in pertinent part: "The supreme court shall not be bound to consider as error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by *the party appealing* immediately after the charge is delivered. . . ." (Emphasis added.)

*Savings Bank* v. *Warner,* 144 Conn. 97, 100, 127 A.2d 495 (1956); see also *Sadd* v. *Heim,* 143 Conn. 582, 586, 124 A.2d 522 (1956); *Hart* v. *Chalker,* 14 Conn. 77, 79 (1840). Thus, whether the mortgage secured an antecedent debt is immaterial to the determination of the subordination of the plaintiffs' mortgage.

The defendant also claims that the plaintiffs' mortgage is not entitled to priority because Sund had transferred his interest in the land to Ifkovic prior to his delivery of the mortgage to the plaintiffs. "Our recordation statute, now [General Statutes] § 47-10, has consistently been interpreted as providing for a reasonable period within which to record a deed of conveyance. That construction finds support in its provision that no conveyance can be effective against subsequent innocent parties *'unless* recorded on the records of the town in which the land lies.' (Emphasis added.) [General Statutes § 47-10]. The use of the word 'unless' as opposed to 'until' connotes legislative recognition of the proposition that rights conveyed by a deed may effectively accrue a reasonable time prior to its actual recordation. Since *Beers* v. *Hawley,* 2 Conn. 467, 469 (1818), construing predecessor statutes with similar texts, this court has permitted a mortgage deed, if recorded within a reasonable time of its execution, to take priority from the date of its delivery, even as to liens recorded prior to the recording of the deed but subsequent to its execution. *Apstein* v. *Sprow,* 91 Conn. 421, 99 A. 1045 (1917); *Hartford Building & Loan Assn.* v. *Goldreyer,* 71 Conn. 95, 99–100, 41 A. 659 (1898); *Goodsell* v. *Sullivan,* 40 Conn. 83, 85 (1873); see 1 Z. Swift, A System of the Laws of the State of Connecticut (1795) p. 308 ('every purchaser of land shall have a reasonable time to procure his deed to be recorded').

"Because the wording of § 47-10 has remained in essentially the same form since the 1800s, we may presume legislative acquiescence in our interpretation of

the mortgage lien statute. '[I]ts subsequent nonaction may be understood as a validation of that interpretation.' *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 134, 527 A.2d 672 (1987), quoting *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 439, 525 A.2d 91 (1987)." *Farmers & Mechanics Savings Bank* v. *Garofalo,* 219 Conn. 810, 816–17, 595 A.2d 341 (1991). Further, a mortgage is considered a conveyance of land. *Second National Bank* v. *Dyer,* 121 Conn. 263, 267, 184 A. 386 (1936). Thus, the critical factor is whether eight days is a reasonable time for Chemical Bank to file their mortgage in determining the effect of the delivery of title from Sund to Ifkovic and the subsequent delivery of the mortgage to Chemical Bank on the priority of the plaintiffs mortgage.

" '[W]hat is a reasonable time is a question of fact for the trial court, and its finding is conclusive.' . . . Numerous cases have addressed the issue of what constitutes a reasonable time period for recordation of a real property deed so as to give a mortgagee or purchaser priority over intervening lienholders. Short delays ranging from thirty-one hours; *Goodsell* v. *Sullivan,* supra, [40 Conn. 85]; to one day; *Hartford Building & Loan Assn.* v. *Goldreyer,* supra, [71 Conn. 99–100]; or to two days; *Apstein* v. *Sprow,* supra, [91 Conn. 424]; have been held to be reasonable. By contrast, delays measured in months and years have been held to be unreasonable. *Pond* v. *Skidmore,* [40 Conn. 213, 222 (1873)] (eight months); *Rees* v. *Hemisphere Publishing Corporation,* 11 Conn. Sup. 403, 407 (1943) (four and one-half months); *Burgey* v. *Bochinski,* 16 Conn. Sup. 427, 428 (1950) (twelve years). These cases do not provide guidance, as a matter of law, about the reasonableness of a[n eight] day delay in recordation. ' "[T]he length of time that is to be considered reasonable, has never been ascertained, and perhaps cannot be, and must be left according to the special circum-

stances of each case." ' *Beers* v. *Hawley,* supra, [2 Conn. 471] quoting 1 Z. Swift, supra, p. 308." *Farmers & Mechanics Savings Bank* v. *Garofalo,* supra, 219 Conn. 820–21.

The trial court found that the eight day delay by Chemical Bank was not reasonable. The trial court based its decision on the testimony of an expert in the field of real estate law. We will not disturb this finding. Thus, the conveyance from Sund to Ifkovic and the subsequent mortgage to Chemical Bank is not effective against the plaintiffs and the plaintiffs' interest is entitled to priority over the defendant Chemical Bank's interest.

The judgment is affirmed.

In this opinion FOTI, J., concurred.

LAVERY, J., dissenting. I respectfully dissent from part I of the majority's opinion because the record is adequate for our review and the facts require equitable subrogation.

I

The majority reviews the trial court's memorandum of decision and, not finding the words "equitable subrogation," concludes (1) that the trial court failed to comply with Practice Book § 4059, (2) that Chemical Bank (defendant) failed to comply with Practice Book § 4061, and (3) that we cannot review the defendant's claim for equitable subrogation for lack of an adequate record. The majority correctly points out that § 4059 requires that the trial court give its conclusions on each issue raised by the parties. That section does not, however, require the trial court to recite, in talismanic fashion, particular words and phrases.

The trial court did state its conclusions on the equitable subrogation claim. In its memorandum of deci-

sion, the court reviewed the stipulated facts and then addressed the defendant's claims. First, the court resolved the dispute over the validity of the Cottieros' mortgage. The defendant had claimed that the mortgage was invalid as not supported by sufficient consideration. The trial court found that valuable consideration had been exchanged and that the two month period between execution of the note and the mortgage was reasonable. The trial court concluded that the Cottieros' mortgage was valid.

After reaching that conclusion, and before considering the unjust enrichment claim and the attack on the amount of the debt, the trial court reviewed the posture and conduct of the parties. In a paragraph separate from its treatment of all of the other claims, the trial court noted that Sund had deliberately concealed his sale to Ifkovic, and the Cottieros had no notice of Sund's sale and had acted reasonably. The court further observed that the defendant had without explanation unreasonably delayed recording their mortgage. In light of the equities among the parties, the court concluded that "[i]t would be unfair and unjust to rearrange the priorities in this case to give the bank, a later recorded mortgage, a superior right of enforcement . . . ."

I believe that a reasonable and rational reading of this paragraph reveals that the trial court did address the equitable subrogation claim. Equitable subrogation rearranges the priorities of the parties in a case. See *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.,* 123 Conn. 232, 238–39, 193 A. 769 (1937); 2 J. Story, Equity Jurisprudence (14th Ed. 1918) § 707. That rearrangement is based on fairness and justice. See *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.,* supra, 238–39. Because the trial court believed that the Cottieros had acted reasonably and the defendants had acted

unreasonably, the court concluded that rearranging the priorities would not be fair and just.

I respectfully submit that the context of the decision makes clear that the trial court did address the claim and that the record is adequate for our review.[1]

## II

The facts of this case are, I believe, quintessentially suited to equitable subrogation. I agree with the facts set out in the majority opinion with the following additions. When Sund executed a note in favor of the plaintiffs, the property securing the note was subject to (1) a mortgage in the amount of $111,352.15 from Sund to the Branford Savings Bank, and (2) a judgment lien in the amount of $40,930 based on a debt that the Cottieros and Sund, in their capacities as partners, owed to Branford Savings Bank. When Sund sold the property to Ifkovic, Chemical Bank paid $152,282.15 to satisfy and release these two encumbrances. Notwithstanding Chemical Bank's release of those encumbrances, the plaintiffs testified that they believed they were taking a mortgage subject to the prior encumbrances. Leonard Cottiero testified that he knew of the

---

[1] To the extent that the trial court did not use the term "equitable subrogation," the discussion is not as obvious as it might be. Even if the record was inadequate, however, I believe the proper resolution would be to remand for articulation. "[U]nder normal circumstances, this court will not remand a case to correct a deficiency that the appellant should have remedied." *Economy Sales & Service Co.* v. *Family Center Pharmacy, Inc.,* 33 Conn. App. 822, 825, 639 A.2d 1042 (1994). "On a case-by-case basis, however, both [appellate] courts have on occasion ordered articulation even after the case has been argued." Id.; see also id., 825 n.5 (citing cases remanded for articulation after argument); *Dime Savings Bank of Wallingford* v. *Cornaglia,* 33 Conn. App. 549, 561, 636 A.2d 1370 (*Lavery, J.,* dissenting), cert. granted, 229 Conn. 907, 640 A.2d 120 (1994). Failure to remand in cases such as this one, where the trial court did in fact conclude the issue of law would recast Practice Book § 4059 as the supreme shredder of viable appealable issues.

law suit and resulting judgment lien[2] and Jacqueline Cottiero testified that she knew there was a mortgage on the property.[3] When Sund defaulted on his note,[4]

---

[2] Leonard Cottiero testified as follows:

"Q. Did you know whether or not there were any liens or encumbrances against the property at 3 Waverly Road?

"A. Yes. I assumed there was. I did not know for sure.

"Q. You knew for sure about one, didn't you? Weren't you and Mrs. Cottiero and Sund attached by Branford Savings Bank?

"A. Yes.

\* \* \*

"Q. Do you recall how much the attachment was for?

"A. It says here sixty thousand.

\* \* \*

"Q. Did you discuss the status of the title with Mr. Sund?

"A. No.

"Q. But you knew that because he told you he didn't have enough equity to get his own mortgage, you know there was some lien against the property?

"A. Yes.

"Q. One of which you knew about because you were part of the lawsuit?

"A. Right.

"Q. Do you know what it means to have a first mortgage on the property?

"A. Yes.

"Q. Did you think you were getting a first mortgage on the property?

"A. I was not sure.

"Q. When you say you were not sure, you knew there was an attachment against the property?

"A. Yes..

"Q. So you knew that would be ahead of your lien?

"A. I did not know that for sure."

[3] Jacqueline Cottiero testified as follows:

"Q. Do you know or did you know at that time whether there were any liens against that property?

"A. Which property are you talking?

"Q. Waverly Road?

"A. I thought there was one mortgage on it and that was it."

[4] I note that the Cottieros' partner, Sund, is the source of all of the parties' present woes. By mortgaging property that he no longer owned, Sund obtained relief from a $95,000 debt he owed to his partners, relief from a $40,930 debt he owed Branford Savings Bank, relief from a $111,352 mortgage to Branford Savings, and obtained an additional $81,481.45 in cash. He filed bankruptcy and is now protected from liability by his discharge.

the Cottieros discovered that their lien had been advanced to first priority by Chemical Bank's payment, and foreclosed on the property.

This brief recitation of the facts reveals that the Cottieros benefited from a threefold windfall: They received the value of $152,282.15 when their mortgage was advanced from third to first place by Chemical Bank's satisfaction of the Branford Savings Bank's mortgage and judgment lien. When they foreclosed, the Cottieros also received $135,000 worth of property[5] for which they paid only $95,000. Finally, the Cottieros were released from personal liability for the $40,930 partnership debt owed to Branford Savings Bank.[6]

" 'Subrogation is a doctrine which equity borrowed from the civil law and administers so as to secure justice without regard to form or mere technicality. . . .' " *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.,* supra, 123 Conn. 238. "Subrogation is the substitution of one person in place of another . . . so that he who is substituted succeeds to the rights of the other . . . ." 2 J. Story, supra, § 707; see also Restatement, Restitution § 162 (1937). "Equitable subrogation . . . is a legal fiction entitling a person to reimbursement for discharging the debt or obligation for one who should have paid it." *Thornton* v. *Syracuse Savings Bank,* 961 F.2d 1042, 1046–47 (2d Cir. 1992).

The aim of equitable subrogation is to prevent the unjust enrichment of another person; 1 G. Palmer, The Law of Restitution (1978) § 3.6; while not causing that person to suffer inequity. *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.,* supra, 123 Conn. 243. Thus,

---

[5] At the time of the hearing, a private sale of the property for $135,000 was pending. The parties agreed to place the proceeds of the sale in escrow pending resolution of this action.

[6] The Cottieros were jointly liable with Sund for this debt. General Statutes § 34-53 (partners are liable jointly for all partnership debt).

a subrogee takes only those rights held by the subrogor. *Continental Casualty Co.* v. *Pullman, Comley, Bradley & Reeves,* 709 F. Sup. 44, 49 (D. Conn. 1989). "This doctrine is not static, but so elastic as to take within its remedy cases of first instance which fairly fall within it and secure its primary object by compelling payment of a debt by him who ought in equity and good conscience to pay it." (Internal quotation marks omitted.) *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.,* supra, 238–39.

"In numerous cases it has been held that one who advances money to discharge a prior lien on real or personal property and takes a new mortgage as security is entitled to be subrogated to the rights under the prior lien against the holder of an intervening lien of which he was ignorant." Id., 237. Faced with those facts, our Supreme Court did employ equitable subrogation in *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.,* supra, 248. Equitable subrogation has often been used to disgorge unjust enrichment in cases similar to this one, where equity and good conscience so demanded.[7] See 1 G. Palmer, supra, § 3.6 (a); J. Pomeroy, Equity Jurisprudence (5th Ed. 1941) § 1212, pp. 642–43.

---

[7] See, e.g., *Wesson, Inc.* v. *Hychko,* 205 Conn. 51, 59, 529 A.2d 714 (1987) (where vendor pays taxes on sale mistakenly believed nontaxable, equitable subrogation entitles vendor to obtain reimbursement from buyer); *Connecticut National Bank* v. *Chapman,* 153 Conn. 393, 399–400, 216 A.2d 814 (1966) (first mortgagee, who released mortgage to refinance, subrogated to priority over unknown second mortgagee); *Lomas & Nettleton Co.* v. *Isacs,* 101 Conn. 614, 625–26, 127 A. 6 (1924) (first and second mortgagee, who released mortgages to refinance, subrogated to priority over unknown third mortgage); *First Taxing District* v. *National Surety Co.,* 97 Conn. 639, 649, 118 A. 96 (1922) (where embezzled district funds used by estate administrator to pay creditors, district subrogated to creditor's rights against administrator's surety); *Paton* v. *Robinson,* 81 Conn. 547, 555, 71 A. 730 (1909) (buyer who satisfies first mortgage subrogated to that mortgage's priority against all others when title proves defective).

I believe that, in this case, equity and good conscience demand that Chemical Bank be subrogated to the priority of the debts it discharged. Equity must be employed to best serve justice and to carry out the actual intention of the parties. *Lomas & Nettleton Co.* v. *Isacs,* 101 Conn. 614, 622, 127 A. 6 (1924). Thus, the parties' intent is a controlling consideration. Id. In this case, the plaintiffs intended their mortgage to be subject to the existing encumbrances; the defendant intended, and paid for the right to be, superior to all encumbrances. Subrogating Chemical Bank to the debts it discharged will best achieve the parties' intent.

Subrogation will also best serve justice. The plaintiffs' unwarranted threefold windfall justifies subrogation. See *Connecticut National Bank* v. *Chapman,* 153 Conn. 393, 399, 216 A.2d 814 (1966) ("[t]o deny relief . . . would result in . . . unjust enrichment . . . through an unexpected and undeserved windfall"). By paying off the attachments, Chemical Bank paid off a partnership debt for which the plaintiffs were liable, gave the plaintiffs $152,282 in value by advancing their lien which the plaintiffs neither expected nor bargained for, and enabled the plaintiffs to obtain $135,000 in property.[8] Since the Cottieros benefited from the satisfaction of the prior liens, they should pay for the benefit. Equity and good conscience demand that Chemical Bank receive the value of what it paid by being equitably subrogated to the priority of the liens it discharged.

Equitable relief is not barred by Chemical Bank's tardy filing of its mortgage. Ignorance of an intervening lien when discharging a superior lien is "regarded in equity as equivalent to a mistake . . . ." Id., 398; *Lomas & Nettleton Co.* v. *Isacs,* supra, 101 Conn.

---

[8] Chemical Bank's payment was the only way the Cottieros could obtain the property: before their lien was advanced, the superior liens were far greater than the value of the property, and Sund's bankruptcy discharge left the plaintiffs without recourse.

620–21. "We have upheld the power of a court of equity to grant relief from the consequences of an innocent mistake although the mistake was not unmixed with negligence (*Fountain Co.* v. *Stein,* 97 Conn. 619, 626, 118 Atl. 47) . . . where the failure to do so would allow one to enrich himself unjustly at the expense of another." *Lomas & Nettleton Co.* v. *Isacs,* supra, 620–21; see also *Wesson, Inc.* v. *Hychko,* 205 Conn. 51, 59, 529 A.2d 714 (1987); *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.,* supra, 123 Conn. 242; *Connecticut National Bank* v. *Chapman,* supra, 153 Conn. 398; 1 G. Palmer, supra, § 3.6, pp. 249, 256 ("[o]ne cannot justify the retention of a windfall, conferred upon him by another through mistake, because that other was careless"). Therefore, Chemical Bank's negligent failure to record its mortgage in a timely fashion does not bar the relief of equitable subrogation.

Nor is equitable relief barred by prejudice to the plaintiffs. Chemical Bank would not be entitled to subrogation if it would prejudice or work inequity to the plaintiffs. It will not. Subrogees can only be subrogated to the rights held by the subrogor. *Continental Casualty Co.* v. *Pullman, Comley, Bradley & Reeves,* supra, 709 F. Sup. 49. Thus, Chemical Bank would be subrogated only to the amount of the prior liens that it discharged, $152,282.15. Because that will put the plaintiffs in the exact financial position that they intended to occupy, and believed they occupied, they will neither be prejudiced nor suffer inequity. Moreover, the plaintiffs would still reap the reward of the release of the partnership debt for which they were liable. Thus, they will benefit regardless of Chemical Bank's priority.

Finally, I note that the purpose of the recording act would not be advanced if equitable subrogation was denied because Chemical Bank failed to record timely. One of the central purposes of the recording system is to preserve the priority of liens. 1 G. Palmer, supra,

§ 3.6, p. 256. Here, the plaintiffs are not seeking to preserve the priority gained by their recording. They seek, instead, to retain the advantage of a higher priority obtained at the defendant's expense. "Subrogation merely returns [the plaintiffs] to the position of priority which [they] protected through recording." Id.

Because the trial court addressed the claim and because the facts before us strongly support the application of equitable subrogation, I would follow the precedent of *Home Owners' Loan Corp.* and *Lomas & Nettleton Co.*, and reverse the trial court's judgment.

Accordingly, I respectfully dissent.