DARIN INGELS ET AL. *v.* YOLANDA SALDANA ET AL.
(AC 27636)

Bishop, DiPentima and Harper, Js.

Argued May 30—officially released September 11, 2007

*Edward Kanowitz*, for the appellant (defendant Murray Real Estate Services, Inc.).

*Shelley R. Sadin*, with whom, on the brief, was *Patrick R. Smith*, for the appellees (plaintiffs).

*Opinion*

HARPER, J. The dispositive issue in this appeal is whether the trial court properly found the defendant Murray Real Estate Services, Inc.,[1] to be liable for the

---

[1] Murray Real Estate Services, Inc., and Yolanda Saldana were named as the defendants in this action. Saldana is not a party to this appeal. We

conduct of its president in connection with a lease to which the defendant was a third party. After trial, the court rendered judgment in favor of the plaintiffs, Darin Ingels and Michelle Ingels, on two counts of their four count amended complaint. On appeal, the defendant challenges the judgment on both of those counts, as well as the court's award of attorney's fees to the plaintiffs. The defendant also claims that the court's issuance of an order of posttrial discovery and sanctions was improper. We affirm the judgment of the trial court.

The following facts, as found by the court, and procedural history are relevant to our discussion. In the fall of 2000, the plaintiffs, who were contemplating relocating to Connecticut, were shown a series of apartments by the defendant's president, Barbara Murray. Murray provided the plaintiffs with a business card, which identified her as the president of the defendant. The plaintiffs thereafter agreed to lease one such apartment from Yolanda Saldana. Saldana and the plaintiffs entered into a one year written lease beginning December 1, 2002. The lease listed Saldana's "Address for Notice" as "c/o Murray R. E. Services, Inc., Barbara Murray" at a Westport post office box. In accordance with the terms of the lease, the plaintiffs provided a $3000 security deposit, which they delivered to Murray. Murray placed the security deposit in a bank account under the name "Barbara S. Murray, Escrow Agent for Darin J. Ingels, Tenant" (escrow account). The address listed for the escrow account was the same post office box listed in the lease.

The plaintiffs remained in possession of the apartment for the duration of the lease, as well as two subsequent one year leases.[2] Throughout the course of the

therefore refer in this opinion to Murray Real Estate Services, Inc., as the defendant.

[2] Each subsequent lease also identified Saldana's contact information as Murray, in care of the defendant.

plaintiffs' tenancy, the plaintiffs never met with Saldana; all dealings between the plaintiffs and Saldana were made through Murray and the defendant. Notably, the plaintiffs mailed rent checks, payable to Saldana, to Murray in care of the defendant.

During the fall of 2003, the plaintiffs gave notice to Saldana that they would not be renewing their lease. Soon thereafter, Murray conducted a walk through inspection of the apartment. Murray did not make any claims for damages to be debited against the plaintiffs' security deposit during this walk through or at any time before the plaintiffs vacated the premises on December 5, 2003.

On December 8, 2003, the escrow account was closed, and the entire security deposit, plus interest, was delivered to Saldana. On December 19, 2003, Murray prepared a document entitled "Account for Security Deposit" on the defendant's letterhead. The document explained that damages to the apartment exceeded the amount of the security deposit and that the plaintiffs therefore owed Saldana a balance of $734.45. The damages were largely overstated by the defendant, and included debits of $2500 for a single repair of localized water damage to a subjacent ceiling and $1154 for replacing carpets that had been damaged prior to the plaintiffs' tenancy.

The plaintiffs thereafter filed suit against Saldana and the defendant. The plaintiffs' operative amended complaint contained four counts, only two of which are relevant to this appeal.[3] The first count was directed toward the defendant and Saldana and sought the return of the allegedly wrongfully withheld security deposit.

---

[3] The other two counts were directed at both the defendant and Saldana and alleged unjust enrichment in one count and, in another, that double damages were due for the wrongful withholding of the security deposit pursuant to General Statutes § 47a-21 (d) (2).

The third count alleged that the defendant's actions violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. After a trial to the court, judgment was rendered in favor of the plaintiffs on counts one and three and in favor of Saldana and the defendant on count two.[4] The court subsequently granted the plaintiffs' application for attorney's fees in connection with the CUTPA claim.

## I

The defendant first claims that the court improperly rendered judgment against it under count one, which the defendant asserts, set forth a breach of contract claim. Although the defendant's brief is not a model of clarity, the defendant essentially argues that, as a matter of law, it cannot be held liable under this count because it was not a party to the contract between the plaintiffs and Saldana, the contract that was allegedly breached. We are not persuaded.

Contrary to the defendant's characterization of the judgment against it, our review of the court's memorandum of decision plainly reveals that the court rendered judgment against the defendant under count one for breach of fiduciary duty, not breach of contract.[5] The court held that the defendant, as an escrow agent acting on Saldana's behalf, owed the plaintiffs a fiduciary duty. The court further found that, by overstating damages to the apartment and giving the entire security deposit at issue to Saldana, the defendant breached that fiduciary duty, thereby causing the damages awarded. We decline to address the issue briefed because it is irrelevant to

---

[4] The plaintiffs withdrew count four at the close of trial.

[5] The plaintiffs did not classify count one as a breach of contract claim and, at trial, the defendant acknowledged that count one "alleg[ed] the failure to return the security deposit." The defendant does not claim that it lacked notice of the nature of the claim. We also note that, at trial, the defendant did not file a request to revise the complaint in accordance with Practice Book § 10-35.

the judgment from which the defendant appeals. See *Housing Authority* v. *Olesen*, 31 Conn. App. 359, 361, 624 A.2d 920 (1993) (court declines to address defendant's claim because it is irrelevant to disposition of appeal).

## II

The defendant next argues that it cannot be held liable under counts one or three because Murray was not acting as its agent in her interactions with the plaintiffs.[6] Specifically, the defendant claims that Murray acted in her behalf, rather than in her official capacity as its president, when interacting with the plaintiffs. Because we conclude that the defendant has raised this argument for the first time on appeal, we decline to afford it review.

The following additional facts are relevant to our discussion of this issue. At trial, the defendant argued that it could not be held liable for actions taken by Murray on behalf of Saldana. In advancing this argument, the defendant conceded repeatedly that Murray was, at all relevant times, acting on its behalf. The defendant's argument also reflects its assumption that Murray was at all relevant times acting as an agent of Saldana. Presumably in reliance on those representations plainly evident from the defendant's argument and theory of defense, the court noted in its memorandum of decision that the defendant acted at all relevant times as Saldana's agent. At no time after the trial did the defendant attempt to retract its prior statements or ask the court to determine in the first instance whether an

---

[6] The defendant also maintains that the court improperly applied a per se rule that "[i]t is unlawful to 'transfer money to the landlord before the time for proper notification [pursuant to General Statutes § 47a-21 (d)] has expired' . . . ." This argument is not well founded, however, because the court's memorandum of decision plainly reflects that the court based its judgment on the whole of the defendant's conduct, which, the court concluded, amounted to a breach of the fiduciary duty owed to the plaintiffs.

agency relationship existed between it and Murray or between Murray and Saldana.

"[This] court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Practice Book § 60-5. Here, the court never considered whether the requisite agency relationship existed because it appeared to be an undisputed fact at trial. Having led the court to believe that it was not contesting the issue of agency, the defendant may not now claim on appeal that the court improperly found that it was bound by the actions taken by Murray on behalf of Saldana, the principal. To allow such a claim to be raised on appeal "would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Monette* v. *Monette*, 102 Conn. App. 1, 18 n.3, 924 A.2d 894 (2007) (*Schaller, J.*, concurring); see also *Ahern* v. *Fuss & O'Neill, Inc.*, 78 Conn. App. 202, 214, 826 A.2d 1224 ("a party cannot present a case to the trial court on one theory and then seek appellate relief on a different one"), cert. denied, 266 Conn. 907, 832 A.2d 64 (2003). We therefore decline to review this issue.[7]

### III

Finally, the defendant challenges the court's orders of compliance with posttrial discovery and sanctions. Because we conclude that this order is not a final judgment from which an appeal may lie, we dismiss this aspect of the appeal.

---

[7] The defendant's appeal challenges the court's award of attorney's fees for the same reasons as it challenges the court's rendering of judgment on count three, which alleged violation of CUTPA. The defendant is thus not challenging the method of calculation of the award, but rather the underlying finding giving rise to the award.

We have, of course, declined to review that underlying finding. As the defendant has presented no new arguments with respect to the court's award of attorney's fees, we likewise decline to consider this aspect of the defendant's appeal.

The following additional facts and procedural history are necessary to our disposition of this issue. Subsequent to the court's award of attorney's fees, the court granted an application for a postjudgment remedy, requiring the defendant's disclosure of assets. The defendant responded by submitting an affidavit from Murray on September 13, 2006, in which she stated that the defendant had no assets "[a]t this time." The plaintiffs then served the defendant's president, Murray, and its secretary, Edward Kanowitz, with subpoenas to appear at a deposition. Neither Murray nor Kanowitz appeared at the deposition. On November 15, 2006, the plaintiffs filed a "motion to compel compliance with subpoena and sanctions." On January 8, 2007, the court granted the motion and ordered the defendant to comply with the subpoenas. The court further issued an order sanctioning the defendant in the amount of $164.57. On January 11, 2007, the defendant, prior to appearing at the deposition or being held in contempt of the court's order, filed a supplemental appeal, challenging the compliance and sanction orders. This court then alerted the parties by letter dated May 18, 2007, to "be prepared to address at oral argument any questions the court may have as to why [the defendant's supplemental] appeal should not be dismissed for lack of a final judgment on the ground that . . . at the time the [supplemental] appeal was filed, the defendant had not been held in contempt . . . ."

We need not now discuss the merits of the claims raised by the defendant, as we conclude that the court has not rendered a final judgment on the matters challenged on appeal. General Statutes § 52-263 limits appellate jurisdiction to appeals from final judgments. *Harvey* v. *Wilcox*, 67 Conn. App. 1, 5, 786 A.2d 533 (2001). "An order issued upon a motion for discovery is ordinarily not appealable because it does not constitute a final judgment, at least in civil actions." (Internal

quotation marks omitted.) *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 255, 520 A.2d 605 (1987). Further, *Presidential Capital Corp.* v. *Reale*, 240 Conn. 623, 629, 692 A.2d 794 (1997), refutes the defendant's contention at oral argument that there exists a material and relevant distinction between pretrial and posttrial discovery orders. In order to appeal from the court's order of compliance and sanctions, the defendant would need to show that it has been held in contempt for noncompliance and then appeal from the resulting final judgment. See *Green Rock Ridge, Inc.* v. *Kobernat*, 250 Conn. 488, 498, 736 A.2d 851 (1999); *Barbato* v. *J.& M. Corp.*, 194 Conn. 245, 249, 478 A.2d 1020 (1984). These events have not transpired.

The portion of the appeal related to the court's order of compliance and order of sanctions is dismissed. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.