FARHAD MOASSER *v.* JAMES A. BECKER ET AL.
(AC 27894)

DiPentima, Harper and Hennessy, Js.

Argued December 4, 2007—officially released April 22, 2008

*Philip M. French*, for the appellant (plaintiff).

*Mark F. Katz*, for the appellee (defendant Judith Becker).

*Opinion*

HARPER, J. The plaintiff, Farhad Moasser, appeals from the judgment of the trial court ordering disbursement of the proceeds of a foreclosure sale. The plaintiff

claims that the court improperly (1) disbursed the proceeds of the foreclosure sale and (2) calculated the amount of deficiency judgment owed to the plaintiff. We reverse the judgment with respect to the first claim and dismiss that portion of the appeal involving the second claim.

The roots of this appeal can be traced to a series of judgment liens obtained by the plaintiff in 1988 and 1989 against James A. Becker.[1] These liens attached to Becker's one-half interest in a parcel of real estate that he and his then wife, the defendant Judith Becker, owned as joint tenants. On October 30, 1992, the plaintiff filed an action to foreclose on those liens. Years of contentious litigation ensued, and not until November 13, 2004, did the foreclosure sale occur. On July 12, 2006, the court ordered disbursement of the sale proceeds. This appeal followed.

## I

The plaintiff first claims that the court failed to disburse properly the proceeds of the November 13, 2004 foreclosure sale. He advances five separate arguments in support of this claim. He argues that the court improperly (1) deducted an attorney's fee award from the overall foreclosure sale proceeds, (2) denied his request for postjudgment interest on this attorney's fee award, (3) denied his request for an additional postjudgment attorney's fee award, (4) calculated the amount of committee fees to be deducted from the foreclosure sale proceeds and (5) disbursed a portion of the foreclosure sale proceeds to a fellow lienholder. We will review each argument in turn.

---

[1] James Becker is the former husband of Judith Becker, a codefendant. Judith Becker is the only defendant involved in this appeal; neither James Becker nor any of the other defendants, Jeanne Altschul, the city of Stamford, Union Trust Company, Mechanics and Farmers Savings Bank, Connecticut National Bank, Duel and Holland, and Pilar Smith, are parties to this appeal. Henceforth, all references to the defendant will refer only to Judith Becker.

## A

### Disbursement of Attorney's Fees

The plaintiff first argues that the court improperly deducted a prior attorney's fee award from the overall foreclosure sale proceeds, as opposed to solely from the defendant's portion of those proceeds. We agree with the plaintiff.

The following facts and procedural history are relevant to our disposition of the plaintiff's argument. On January 5, 1995, the plaintiff's foreclosure action was tried before an attorney trial referee.[2] On July 7, 1995, the referee filed her report recommending foreclosure. On November 2, 1995, the court rendered judgment in accordance with the referee's recommendation. On September 13, 1996, the court granted the defendant's motion to intervene as a party defendant in order to grant her an opportunity to redeem the property. The court, however, specifically precluded the defendant "from relitigating . . . any . . . matters which are the law of the case" due to the fact that she had had knowledge of the case for more than two years prior to her moving to intervene. Over the course of the next two years, the plaintiff sought to effectuate the foreclosure, only to have his attempts forestalled by various defenses asserted by the defendant.[3]

James Becker and the defendant were divorced in 1994. In connection with their divorce, James Becker transferred his one-half interest in the subject property to the defendant. Shortly thereafter, two mortgages on the property, both superior in right to the liens of the plaintiff, were assigned to Jeanne Altschul, the mother of the attorney representing the defendant in this matter, as trustee. Following the assignments, the defendant ceased making payments on these mortgages, and

---

[2] At this point in time, the defendant was not a party to the cause of action.

[3] James Becker did not join in these defenses.

Altschul began paying applicable taxes on the property. The plaintiff thereafter filed a second amended complaint,[4] adding allegations of fraud and conspiracy against the defendant and Altschul.

A second trial before an attorney trial referee was conducted between December, 2000, and January, 2001. Upon the completion of this trial, the defendant and Altschul moved to dismiss the plaintiff's second amended complaint. They claimed that because the plaintiff had failed to follow the procedures of the Uniform Enforcement of Foreign Judgments Act, General Statutes § 52-604 et seq., in recording liens awarded pursuant to a judgment of the United States District Court for the District of Connecticut, the trial court lacked subject matter jurisdiction. In his June 11, 2001 report, the attorney trial referee recommended judgment in favor of the plaintiff with respect to the fraud and conspiracy claims, as well as with respect to the motion to dismiss. The referee also recommended that the plaintiff be awarded attorney's fees, pursuant to General Statutes § 52-350f,[5] for work performed between the time of the November 2, 1995 judgment, which had initially authorized foreclosure, and the date of the filing of the most recent attorney trial referee report. In support of this recommendation, the referee found that the litigation occurring during this time

---

[4] The plaintiff had filed a first amended complaint shortly after the court granted the defendant's motion to intervene to reflect her status as a party defendant.

[5] General Statutes § 52-350f provides in relevant part that a "money judgment may be enforced . . . by foreclosure of a real property lien, to the amount of the money judgment with . . . any attorney's fees allowed pursuant to section 52-400c."

General Statutes § 52-400c in turn provides in relevant part: "In the discretion of the court, a reasonable attorney's fee may be allowed to the prevailing party . . . for counsel at any . . . hearing that is reasonable and necessary for the enforcement of rights pursuant to a postjudgment procedure that is held on a claim or defense that the court determines was made for the purpose of harassment or solely for the purpose of delay."

amounted to postjudgment procedures involving defenses advanced solely for the purpose of delay. The referee further recommended that "Jeanne Altschul and [the defendant] should pay [the plaintiff's] attorney's fees personally, since their defense was solely for the purpose of delay." On January 14, 2002, the court rendered judgment in accordance with the June 11, 2001 report.

After the foreclosure sale occurred on November 13, 2004, the court ordered the distribution of the foreclosure sale proceeds in its July 12, 2006 memorandum of decision. In this memorandum, the court ordered that the January 14, 2002 attorney's fee award be deducted from the overall sale proceeds, rather than solely from the defendant's portion. The parties now contest the interpretation of the January 14, 2002 judgment. The defendant argues that that judgment ordered the court to deduct the attorney's fee award from the foreclosure sale proceeds in the manner in which it did; the plaintiff argues that that judgment ordered the court to deduct the attorney's fee award solely from the defendant's portion of the proceeds.

Our analysis involves interpretation of the January 14, 2002 judgment. "The law of judgments . . . is well settled. The construction of a judgment is a question of law with the determinative factor being the intent of the court as gathered from all parts of the judgment. . . . As a general rule, the court should construe [a] judgment as it would construe any document or written contract in evidence before it. . . . Effect must be given to that which is clearly implied as well as to that which is expressed." (Citations omitted; internal quotation marks omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 806–807, 695 A.2d 1010 (1997).

Our review of the January 14, 2002 judgment leads us to conclude that the only reasonable interpretation of

that judgment is that the attorney's fee award contained therein was intended to be a personal obligation of the defendant and Altschul. The January 14, 2002 memorandum of decision provides in relevant part: "The attorney trial referee concluded that . . . the Beckers and Jeanne Altschul, trustee, were obligated to pay the plaintiff's legal fees . . . because the defenses interposed by those defendants were solely for the purposes of delay . . . ." The memorandum further provides: "The issue of applicability of General Statutes §§ 52-350f and 52-400c is resolved in favor of the plaintiff because it is the function of the trial court to determine whether the defenses presented by the defendants were solely for delay, which is a question of fact. . . . The attorney trial referee determined as a matter of fact that the defenses maintained by the defendant were solely for the purpose of delaying the plaintiff . . . ." (Citation omitted; internal quotation marks omitted.)

Despite the memorandum's reference to "the Beckers" as being liable for attorney's fees, the only "defendants" who had interposed postjudgment defenses, and thus would be eligible to have been taxed with an attorney's fee award pursuant to §§ 52-350f and 52-400c, were the defendant and Altschul. Furthermore, the referee unambiguously stated in his June 11, 2001 report, on which the January 14, 2002 judgment had been rendered, that "Jeanne Altschul and [the defendant] should pay [the plaintiff's] attorney's fees and costs personally, since their defense was solely for the purpose of delay." We therefore conclude that the only reasonable interpretation of the January 14, 2002 judgment is that the defendant and Altschul, as opposed to James Becker, were to be liable for the attorney's fee award contained therein. It follows that that award was to be deducted from the defendant's portion of the foreclosure sale proceeds. As the court failed to do so, we must reverse the judgment of the court.

## B

### Postjudgment Interest on Attorney's Fees

The plaintiff next argues that the court improperly denied his request to assess postjudgment interest on the attorney's fees awarded in the January 14, 2002 judgment. We decline to review this argument.

The following additional facts are necessary for our analysis. After the foreclosure sale had occurred, the plaintiff requested in his November 16, 2005 motion for an order of disbursement an assessment of postjudgment interest on the January 14, 2002 attorney's fee award, pursuant to General Statutes § 37-3a.[6] The court ruled on the plaintiff's motion in its July 12, 2006 memorandum of decision. Nowhere in that July 12, 2006 memorandum of decision did the court discuss, or indeed even mention, the plaintiff's request for interest on the January 14, 2002 attorney's fee award.[7]

Although "[o]ur rules of practice require that the trial court state its decision on each issue in the case and its conclusion as to each issue in the case and its conclusions as to each claim of law raised by the parties . . . [i]t remains the appellant's responsibility to furnish an adequate appellate record." (Citations omitted; internal quotation marks omitted.) *Cottiero* v. *Ifkovic*, 35 Conn. App. 682, 685–86, 647 A.2d 9, cert. denied, 231 Conn.

---

[6] General Statutes § 37-3a provides in relevant part that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

[7] The plaintiff asserts that the court did expressly rule on his request for postjudgment attorney's fees and, in so doing, denied that request because "[t]he referee did not recommend interest on [the attorney's fee award]." (Internal quotation marks omitted.) The plaintiff has relied, however, on the court's earlier July 5, 2005 memorandum of decision to support this assertion. It suffices to state that this court has previously determined, in dismissing the plaintiff's prior appeal from the July 5, 2005 decision, that that decision does not constitute a final judgment on the matter.

938, 651 A.2d 262 (1994). Thus, the failure of a litigant to file a motion for articulation upon a court's failure to rule on a claim vitiates appellate review of the claim. See Practice Book § 66-5; *LaPenta* v. *Bank One, N.A.*, 101 Conn. App. 730, 738, 924 A.2d 868, cert. denied, 284 Conn. 905, 931 A.2d 264 (2007); *Cottiero* v. *Ifkovic*, supra, 685–86; *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, 5 Conn. App. 61, 66, 496 A.2d 539 (1985); W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2007 Ed.) § 66-5, authors' comments, p. 177. Such is the case here. The court failed to rule on the plaintiff's request for an award of postjudgment interest, yet the plaintiff failed to file a motion for articulation asking the court to address the overlooked matter. Accordingly, we decline to review the plaintiff's argument.

C

Postjudgment Attorney's Fees

The plaintiff similarly argues that the court improperly denied his request for additional attorney's fees recompensing litigation expenses incurred after the January 14, 2002 judgment. The plaintiff argues that the court improperly determined that no statutory authority existed that would justify such an award. We agree with the plaintiff.

The plaintiff, in his November 16, 2005 motion for an order of disbursement, requested an award of postjudgment attorney's fees[8] pursuant to General Statutes §§ 52-350f, 52-400c and 52-249.[9] The court, in its July

---

[8] As a matter of clarification, this request was in addition to the court's January 14, 2002 attorney's fee award and the plaintiff's November 16, 2005 request for an award of postjudgment interest.

[9] General Statutes § 52-249 (a) provides in relevant part: "The plaintiff in any action of foreclosure of a . . . lien, upon obtaining judgment of foreclosure, when there has been a hearing as to the form of judgment . . . shall be allowed the same costs, including a reasonable attorney's fee, as if there had been a hearing on an issue of fact. . . ."

12, 2006 memorandum of decision ruled as follows: "Although the plaintiff's counsel worked long and hard on this case and successfully also, there is no statutory or other authority to warrant the imposition of legal fees in addition to the $27,705 previously awarded in the January 14, 2002 memorandum of decision."

"Connecticut adheres to the American rule, which provides that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." (Internal quotation marks omitted.) *Young* v. *Vlahos*, 103 Conn. App. 470, 479, 929 A.2d 362 (2007), cert. denied, 285 Conn. 913, 943 A.2d 474 (2008). If warranted, "[t]he amount of attorney's fees to be awarded rests in the sound discretion of the trial court and will not be disturbed on appeal unless the trial court has abused its discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and *the law*." (Citation omitted; emphasis added; internal quotation marks omitted.) Id. However, "analysis of whether the court applied the correct legal standard is a question of law subject to plenary review." *Wieselman* v. *Hoeniger*, 103 Conn. App. 591, 598, 930 A.2d 768, cert. denied, 284 Conn. 930, 934 A.2d 245 (2007).

We see no reason why the statutory sections relied on by the plaintiff would not authorize the attorney's fee award requested by the plaintiff, were the court to have concluded the plaintiff were so entitled upon a balancing of the equities. For the court to have failed to engage in such an analysis, simply concluding that no statutory authority existed, clearly reflects a misconception of the law. See, e.g., *Tsitaridis* v. *Tsitaridis*, 100 Conn. App. 115, 916 A.2d 877 (2007) (reversing judgment on trial court's failure to apply applicable statute). Accordingly, we reverse this portion of the

judgment and remand for consideration of the plaintiff's claim for attorney's fees.

## D

### Committee Costs

The plaintiff next argues that the court improperly calculated the amount of committee fees to be deducted from the foreclosure sale proceeds. We decline to review this argument.

The following additional facts and procedural history are relevant to our analysis. On January 21, 2003, the court ordered the plaintiff to pay costs of $3557.85 incurred by the foreclosure committee in connection with the foreclosure sale that the court ordered in its January 14, 2002 judgment. Prior to the foreclosure sale, the defendant appealed from the court's January 14, 2002 judgment. We affirmed the judgment. See *Moasser* v. *Becker*, 78 Conn. App. 305, 828 A.2d 116, cert. denied, 266 Conn. 910, 832 A.2d 70 (2003).

After the court rendered another judgment of foreclosure by sale on October 4, 2004, the property was sold by committee on November 13, 2004. On December 23, 2004, the court ordered the committee be allowed an additional fee of $5966.40 for costs incurred in connection with this second auction. The court, in its July 12, 2006 memorandum of decision, deducted the $5966.40 committee fee from the overall foreclosure sale proceeds. The memorandum is silent with respect to the $3557.86 committee fee. The plaintiff does not now challenge the court's decision to deduct the $5966.40 committee fee from the overall proceeds but, rather, argues that the court should have "required the reimbursement to the plaintiff for this earlier incurred sum [of $3557.86 in committee expenses]."

"[This] court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . . Practice Book § 60-5. . . . To

allow such a claim to be raised on appeal would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Ingels* v. *Saldana*, 103 Conn. App. 724, 730, 930 A.2d 774 (2007). The plaintiff, in his November 16, 2005 motion for an order of disbursement, did not request reimbursement for the first $3557.85 committee fee that he had allegedly paid. Therein, the plaintiff "instead [indicated] that the defendant . . . should pay for the second committee fee, which she alone necessitated." As the plaintiff failed to present to the court his argument that the defendant should have reimbursed his payment of the first committee fee, we decline to afford it review.

## E

### Disbursement of Duel and Holland Mortgage

The plaintiff's final argument is that the court improperly disbursed the proceeds of the foreclosure sale to Duel and Holland, a mortgagee with rights superior to those of the plaintiff. The plaintiff himself acknowledges that the court had previously ordered, in its January 14, 2002 memorandum of decision, that the sale proceeds be distributed in such a manner.[10] The plaintiff does not take issue with this initial determination, instead supporting his argument by making generalized references to subsequent judgments that he asserts "modified" the court's order to satisfy the Duel and Holland mortgage via the proceeds of the plaintiff's foreclosure sale.[11] Unfortunately for the plaintiff, we

[10] Although not acknowledged by the plaintiff, the court also ordered as much in its initial foreclosure judgment of November 2, 1995.

[11] The one specific reference that the plaintiff does provide, to the court's October 4, 2004 oral judgment, amounts to a patent mischaracterization of that proceeding. On the whole, we consider the plaintiff's representation of that proceeding to be troubling. Although the plaintiff correctly reiterates the court's initial statement from that proceeding that a foreclosure buyer would purchase subject to a superior mortgage, the plaintiff fails to mention the court's later acknowledgement that in this instance, the superior Duel and Holland mortgage would actually need be satisfied at the time of the foreclosure of the inferior lien of the plaintiff because the superior Duel and Holland mortgage had been recorded pursuant to a court judgment.

have scoured the record, including the judgments referenced by the plaintiff, and can find nothing that would preclude the court from treating the Duel and Holland mortgage in the manner in which it did. Accordingly, we need not address this claim further. See, e.g., *Ingels* v. *Saldana*, supra, 103 Conn. App. 728–29 (appellant's mischaracterization of trial proceedings precludes appellate review).

## II

The plaintiff's final claim is that the court failed to calculate properly the amount of the deficiency judgment owed the plaintiff. We dismiss this portion of the plaintiff's appeal, as the court's decision to award a deficiency judgment does not amount to a final judgment.

In its July 5, 2005 memorandum of decision, the court clearly manifested its intent to award the plaintiff a deficiency judgment[12] pursuant to General Statutes § 49-14.[13] Furthermore, as a matter of law, the plaintiff appears to be entitled to a deficiency judgment pursuant to this provision. At no point, however, did the court calculate or award the amount of the deficiency,[14]

---

[12] Specifically, the court stated that "the plaintiff is entitled to a deficiency judgment representing the difference between the debt owed the plaintiff and the money he obtains from the [distribution of the proceeds of the foreclosure sale]."

[13] General Statutes § 49-14 (a) provides: "At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment."

[14] The plaintiff's assertion that the court calculated the amount of the deficiency judgment in its July 5, 2005 memorandum of decision again amounts to a mischaracterization of the record. Although the court calcu-

instead directing counsel for the parties "to agree on the amount of said deficiency judgment," and "if there is any controversy about the exact numbers, the matter should be claimed to the foreclosure short calendar . . . ." To the extent that the plaintiff's claim relates only to the court's determination of his liability on the deficiency, and the amount of the deficiency remains outstanding, the matter is not final. See, e.g., *Stroiney* v. *Crescent Lake Tax District*, 197 Conn. 82, 84, 495 A.2d 1063 (1985) (judgment as to liability only, without determination of damages, interlocutory in character and not appealable). "General Statutes § 52-263 limits appellate jurisdiction to appeals that are taken from final judgments." *Ingels* v. *Saldana*, supra, 103 Conn. App. 731. Accordingly, we dismiss this portion of the appeal.

The judgment is reversed as to the order deducting the January 14, 2002 postjudgment attorney's fee award from the overall sale proceeds and the case is remanded with direction to deduct that award from the defendant Judith Becker's portion of the sale proceeds; further, the judgment is reversed as to the denial of the plaintiff's request for attorney's fees relative to expenses incurred after the January 14, 2002 judgment, and the case is remanded for further proceedings as to that request; the appeal is dismissed as to the challenge to the court's calculation of the deficiency judgment. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

lated the amount of the total debt due to the plaintiff, nowhere has the court taken the next necessary step and calculated the amount of the deficiency due to the plaintiff.